IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION
Case No. 3:25-cv-14

FEDERATION OF EMPLOYERS AND
WORKERS OF AMERICA;

NATIONAL ASSOCIATION OF
LANDSCAPE PROFESSIONALS;

SEASONAL EMPLOYMENT
ALLIANCE;

OUTDOOR AMUSEMENT BUSINESS
ASSOCIATION;

NATIONAL COUNCIL OF
AGRICULTURAL EMPLOYERS,

 *Plaintiffs*,

v.

ALEJANDRO N. MAYORKAS, in his
official capacity as Secretary of the
United States Department of Homeland
Security; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY;

UR MENDOZA JADDOU, in her
official capacity as Director of United
States Citizenship and Immigration
Services; UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES,

 *Defendants*.

## COMPLAINT FOR VACATUR AND DECLARATORY RELIEF

## INTRODUCTION

1.      On September 20, 2023, the United States Department of Homeland Security ("DHS") published a proposed rule entitled *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, 88 Fed. Reg. 65040 (Sept. 20, 2023). DHS received 1,944 public comments on the proposed rule. Plaintiffs National Association of Landscape Professionals ("NALP"), Outdoor Amusement Business Association ("OABA"), and National Council of Agricultural Employers ("NCAE") submitted their own comments.[1]

2.      On December 18, 2024, DHS finalized and published its proposed rule, with minimal explanation of alleged statutory authority, *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, 89 Fed. Reg. 103202, 103203 (Dec. 18, 2024) (hereinafter "Final Rule"). The Final Rule has minimal differences from the proposed rule and includes vague explanations of and responses to the provisions as to which Plaintiffs commented on during the comment period.

3.      The Final Rule is a blacklisting rule. It purports to create strict liability for employers who use the H-2 visa programs. Under it, DHS will deny employers H-2 petition processing if any "illegal" fee is paid by an H-2 worker they seek to sponsor. This includes fees over which employers have no control or even awareness, such as

---

[1] *See* NALP, Comment Letter on Proposed Rule (Nov. 20, 2023), https://www.regulations.gov/comment/USCIS-2023-0012-190; OABA, Comment Letter on Proposed Rule (Nov. 20, 2023), https://www.regulations.gov/comment/USCIS-2023-0012-1907; NCAE, Comment Letter on Proposed Rule (Nov. 19, 2023), https://www.regulations.gov/comment/USCIS-2023-0012-1874.

those paid to foreign government officials or other third parties outside the United States for being referred to an H-2 job opportunity.

4.    In addition, the Final Rule purports to turn DHS into a freestanding labor law enforcement agency by allowing it to second guess the final determinations of *actual* labor law enforcement agencies such as the Department of Labor ("DOL"), and make its own separate determination to deny the processing of H-2 petitions when the *actual* labor law enforcement agency has determined that debarment from the H-2 visa programs is not necessary.  It also allows DHS to rely on administrative or judicial findings of violations of *any* federal, state, or local "employment-related law" to support denial of H-2 petitions without even defining what is a "employment-related law," and then using a nebulous non-exclusive test to decide to blacklist. Further, DHS made this provision of the Final Rule retroactive from the January 17, 2025 effective date by requiring petitioning employers to report on final adjudications that occurred within three years prior to the effective date.

5.    The Final Rule is *ultra vires*, arbitrary and capricious, contrary to constitutional right, power, privilege, or immunity, and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.   5 U.S.C. § 706(2)(A)–(C).  Any additional rationalization that Defendants may assert through litigation would be an unlawful *post hoc* rationalization of the Final Rule.

6.    The Final Rule also violates the Congressional Review Act because it is "substantially the same" as a governmentwide blacklisting rule promulgated in the

last days of the Obama Administration and subsequently disapproved by Congress in 2017.

## PARTIES

7.     Plaintiff Federation of Employers and Workers of America ("FEWA") is a 501(c)(6) nonprofit organization with its principal place of business in Bay City, Texas, within the Southern District of Texas and its Galveston Division.  FEWA's mission is to assist employers and workers in labor-intensive service industries by providing educational and informational services related to cultural, non-immigrant, and immigrant labor-management issues.  FEWA is dedicated to improving business conditions, building awareness, and providing labor retention and labor management services to its membership through FEWA filing petitions with the United States Citizen and Immigration Services ("USCIS") for its membership, providing training on compliance with the H-2A and H-2B guest worker visa program, and advocacy on behalf of its membership with the federal government agencies involved in the H-2A and H-2B guest worker visa program.  FEWA's membership is nationwide and includes members within the Southern District of Texas.  As of January 17, 2025, FEWA and FEWA members are required to comply with the Final Rule including its attendant compliance cost burden and strict liability for actions occurring within and without membership or FEWA's power to control.

8.     Plaintiff NALP is the national trade organization representing the $151 billion landscape industry in the United States, including its membership in the Southern District of Texas.  NALP is a 501(c)(6) nonprofit headquartered in Fairfax,

Virginia and incorporated in Delaware. NALP's membership specializes in lawn care, landscape maintenance, tree care, irrigation and water management. NALP's membership is located throughout the nation, and in the Southern District of Texas, and works daily servicing homes and businesses to maintain their landscapes, sustain the environment, and take pride in their communities by enhancing and maintaining healthy green spaces. NALP acts as the principal trade association that represents the interests of the landscape industry in federal, state and local policy matters, specifically including the development and implementation of policies that may impact the landscape industry and its use of the H-2B guest worker visa program. The landscape industry, and NALP membership, represents approximately 40% of all users of the H-2B guest worker visa program annually, and has a significant interest in legislative and regulatory matters that impacts NALP memberships' ability to access and use the H-2B guest worker visa program. As of January 17, 2025, NALP members are required to comply with the Final Rule including its attendant compliance cost burden and strict liability for actions occurring within and without membership power to control.

9.     Plaintiff Seasonal Employment Alliance ("SEA") is the largest H-2B advocacy organization. SEA is a 501(c)(6) nonprofit headquartered in Charlottsville, Virginia and incorporated in Washington, D.C. SEA represents over 3,500 small and seasonal employers across all occupations who use the H-2B visa program as well as the many H-2B filing agents that represent tens of thousands of H-2B employers across the nation and throughout the Southern District of Texas. SEA's primary

focus is the application of persistent grassroots advocacy of Congress and the Administration to improve the reliability of the H-2B program. As of January 17, 2025, SEA members are required to comply with the Final Rule including its attendant compliance cost burden and strict liability for actions occurring within and without membership power to control.

10.   Plaintiff OABA promotes the preservation and growth of the outdoor amusement industry through leadership, advocacy, and education. OABA is a 501(c)(6) nonprofit headquartered in West Springfield, Massachusetts and incorporated in Minnesota.  OABA is comprised of about 2,500 members throughout the United States and Canada.  The outdoor amusement industry uses the H-2B visa program and has done so for 20 years, consistently bringing in approximately 9,000 workers annually, with many workers returning year after year.   OABA has advocated for fair rulemaking for the H-2B visa program for many years.  Several of OABA members regularly provide carnival rides to events in the Southern District of Texas.  As of January 17, 2025, OABA members are required to comply with the Final Rule including its attendant compliance cost burden and strict liability for actions occurring within and without membership power to control.

11.   Plaintiff NCAE is a 501(c)(6) nonprofit national trade association headquartered in Washington, D.C., focusing exclusively on agricultural labor issues from the employer's viewpoint, to include the H-2A Program.  NCAE represents approximately 80% of U.S. farm and ranch employers, as well as their agents and trade associations.  NCAE also represents about 90% of the farm and ranch families

presently utilizing the H-2A Temporary Agricultural Worker Visa Program, including members in the Southern District of Texas. NCAE is a leading public policy advocate for agricultural employers and has a longstanding interest in educating its membership and the community regarding employment and labor matters. As of January 17, 2025, NCAE members are required to comply with the Final Rule including its attendant compliance cost burden and strict liability for actions occurring within and without membership power to control.

12.     Defendant DHS is a federal government agency within the meaning of 5 U.S.C. § 552(f)(1). *See* 5 U.S.C. § 551(1). DHS is entrusted with enforcement of the Immigration and Nationality Act ("INA") and is the parent of Defendant USCIS.

13.     Defendant Alejandro N. Mayorkas is the Secretary of Homeland Security and he signed the Final Rule. He is sued in his official capacity.

14.     Defendant USCIS is a federal government agency within the meaning of 5 U.S.C. § 552(f)(1) and has been delegated authority by the Secretary of Homeland Security to process H-2A and H-2B non-immigrant petitions. In addition, the Secretary of Homeland Security has delegated his authority to enforce certain provisions of the INA pertaining to the H-2A and H-2B non-immigrant visa programs and subject to the Final Rule.

15.     Defendant Ur Mendoza Jaddou is the Director of USCIS and is charged with its management. Director Jaddou is accordingly responsible for the enforcement and operational provisions of the Final Rule. She is sued in her official capacity.

## JURISDICTION AND VENUE

16.    This action arises under Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 553, and the INA, 8 U.S.C. §§ 1101, 1103, 1184, 1188.    This Court has jurisdiction under 5 U.S.C. §§ 701–06.  Jurisdiction in this Court is further grounded upon and proper under 28 U.S.C. § 1331, in that this civil action arises under the laws of the United States; 28 U.S.C. § 1346, in that this case involves claims against the federal government; 28 U.S.C. § 1361, in Defendants should be compelled to perform a duty owed to Plaintiffs; and 28 U.S.C. §§ 2201–02, in that there exists an actual justiciable controversy as to which Plaintiffs require a declaration of their rights by this Court and an order vacating the Final Rule under 5 U.S.C. § 706(2) and an award costs and counsel fees pursuant to 28 U.S.C. § 2412.

17.    Venue is proper in this Court under 28 U.S.C. § 1391(e).  This action is brought against officers and agencies of the United States and there is no real property involved.    Venue is also proper under 28 U.S.C. § 1391(b)–(c) because Plaintiff FEWA resides in and has its principal place of business in this judicial district and this division, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district and division.  In addition, all Plaintiffs have membership that are situated in or work within this judicial district and division.

## STATEMENT OF LAW

18.    Among other policy reasons, Congress enacted the INA and its subsequent amendments to regulate and control the process of admitting temporary

foreign workers to the United States to perform temporary labor or services. 8 U.S.C. § 1101(a)(15)(H)(ii); *see also* 8 U.S.C. §§ 1184(c)(1), 1188.

19.    The INA charged the Attorney General with the determination of admitting non-citizens into the United States and subsequently the Homeland Security Act of 2002 ("HSA") transferred that authority to the Secretary of Homeland Security and created DHS. *See* HSA, Pub. L. No. 107-296, 116 Stat. 2135.

20.    DHS further attempts to rely on section 101 of the HSA to claim that it is charged with the general "economic security" of the United States, however in context of the entire section, this "economic security" is not to be diminished by "by efforts, activities, and programs aimed at securing the homeland." *See* 89 Fed. Reg. at 103203. *See also* HSA, 6 U.S.C. § 111(b)(1) (describing the purpose of DHS primarily to counteract terrorist activity in the United States).

### *Impermissible Retroactive Rulemaking*

21.    The HSA charges DHS with "[e]stablishing and administering rules . . . governing the granting of visas . . . to enter the United States to individuals who are not a citizen or an alien lawfully admitted for permanent residence in the United States." 6 U.S.C. § 202(4).

22.    However, this authority does not vest in DHS the ability to make retroactive rules that are contrary to established law. "[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed

by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, (1988).

23.    "New regulations . . . have an impermissible retroactive effect where their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *United States v. Gutierrez*, 443 F. App'x 898, 905–06 (5th Cir. 2011) (internal quotation marks and citations omitted) (citing *Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009)).

24.    DHS Final Rule is retroactive because it allows DHS to deny H-2 visa petitions of employers that have been administratively or judicially adjudicated to have violated any federal, state, or local "employment-related law" for up to three years prior to the Rule taking effect.  89 Fed. Reg. at 103333.

25.    Often, employers who are dealing with these labor law enforcement agencies decide for financial or other reasons (such as ending the time consuming and emotional toll of an ongoing dispute with the government) to settle with the agency and accept a negative adjudication instead of continuing to fight.  What is at issue are often minor violations resulting in no harm to H-2 workers, as evidenced by scarcity of employers debarred from the H-2 programs compared to the number of employers that use the H-2 visa programs.  However, the Final Rule says DHS now may deny H-2 visa petitions based on these past acts prior to the Rule's effective date, effectively punishing an employer for a rational economic decision to settle instead of expending significant resources to fight an adjudication when the employer had no

knowledge or anticipation that DHS would promulgate this Final Rule. Congress through the HSA did not give DHS the authority to make a retroactive rule and thus the action is *ultra vires*, short of statutory right, and arbitrary and capricious. *Cf. El Paso Elec. Co. v. FERC*, 76 F.4th 352, 366 (5th Cir. 2023) (a "wait-and-see suggestion confuses adjudication—which is retroactive . . .—with rulemaking, which is of only future effect.").

### *Impermissibly Vague Rulemaking as to Discretionary Denials for Labor Law Violations*

26.    The Final Rule is also impermissibly vague and thus arbitrary and capricious for that reason standing alone. The Final Rule says USCIS "may" deny an H-2 petition if there is "[a]ny final administrative or judicial determination . . . that the petitioner violated ***any*** applicable employment-related laws or regulations, including health and safety laws or regulations." 89 Fed. Reg. at 103333 (emphasis added).

27.    But DHS has failed to define what it thinks is an "employment-related law" (probably because it doesn't even know—it's not a labor enforcement agency), thus giving no notice to ordinary members of Plaintiffs' organizations as to what underlying conduct "may" cause USCIS to deny a petition. On information and belief, there are tens of thousands of potentially overlapping "employment-related laws" promulgated by the federal government, the States, and municipalities spanning myriad issues such as employee classification, prompt payment, pay transparency, rest and meal breaks, improper discrimination, expense reimbursement, and so on. DHS is not permitted to vaguely say "any" violation of "any" wholly undefined body

of laws may inhibit employer participation in the H-2 programs. That is a violation

of Plaintiffs' due process rights and arbitrary and capricious.

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).[2]

28.     Further, the discretion DHS awarded itself under the Final Rule to deny

a petition based on "any" violation of any "employment-related law" is then rested on

a subjective eight-factor non-exclusive test that is hopelessly vague and opaque. 89

Fed. Reg. at 103333. ("USCIS will consider all relevant factors, including, but not

limited to . . . ."). For these reasons the Final Rule is "impermissibly vague" and

arbitrary and capricious.

> Moreover, the Court finds that the standards set forth in the Final Rule are impermissibly vague. . . . the Final Rule vests the ATF with complete discretion to use a subjective balancing test to weigh six opaque factors on an invisible scale. Consequently, the Court finds that the Final Rule's

---

[2] Defendants attempt to shore up this clear APA violation by saying they will consider a subsequent rulemaking ("additional policy guidance related to this provision," 89 Fed. Reg. at 103256). That is unacceptable. "[A]gencies cannot play the administrative law shell-game of offering future rulemaking as a response to a claim of agency illegality." *El Paso Elec. Co.*, 76 F.4th at 366 (cleaned up).

> six factor test is so impermissibly vague that it provides no meaningful clarity about what constitutes an impermissible stabilizing brace, and, thus, that it is nigh impossible for a regular citizen to determine what constitutes a braced pistol that requires NFA registration.

*Mock v. Garland*, No. 4:23-cv-00095, 2024 U.S. Dist. LEXIS 105230 at *14 (N.D. Tex. June 13, 2024) (cleaned up).

### *Impermissibly Vague Rulemaking as to Denials Based on Illegal Fees*

29.    As with the vagueness of the discretionary denial provisions for labor law violations, the Final Rule is impermissibly vague in defining the "due diligence" required of employer-petitioners in determining if impermissible fees have been paid by H-2 workers during the recruitment process.  89 Fed. Reg. at 103211.

30.    The Final Rule says that the petitioner must "demonstrate 'ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement by such third parties throughout the recruitment, hiring, and employment process.'"  *Id.*  However, the Rule fails to explain what "ongoing, good faith, reasonable efforts" are—and though that term is found 42 times throughout the Rule it never clearly says how employers can demonstrate "ongoing, good faith, reasonable efforts."

31.    To make matters worse, DHS expects employers to use "ongoing, good faith, reasonable efforts" for the entire recruitment chain and even defines who is included in that recruitment chain to include "recruitment or employment services offered by private, nongovernmental individuals and entities, quasi-governmental entities (such as private entities working jointly with ministries of labor), and governmental entities (such as ministries of labor)."  89 Fed. Reg. at 103228.

32.     This is troubling given that Plaintiffs NCAE and SEA have received reports that U.S. Government sponsored recruitment services, through the Ministry of Labor in Guatemala, have been found by the government of Guatemala to charge fees for their recruitment services.  *See* **Exhibit A**, hereto.

33.     Under the Final Rule, employers that utilized the Ministry of Labor in Guatemala could face denials of H-2 petitions across the board because individuals within the Government of Guatemala charged recruitment fees.  This is a service that is subsidized by the U.S. Agency for International Development ("USAID") and highly touted by USAID as a reputable way to recruit workers from Guatemala, El Salvador, and Honduras.  *See* **Exhibit B**, hereto.

34.     The Final Rule is not vague as to who in the recruitment chain can make an employer liable for fees charged but leaves employers with no information as to how to provide evidence to DHS of "ongoing, good faith, reasonable efforts" to ascertain if fees have been paid, especially in the case of U.S. Government sponsored recruitment programs in Guatemala, Honduras, and El Salvador.

35.     The Final Rule then outlines that employers who have workers that have paid fees, or even claimed to have paid fees, the employer must reimburse those fees and then prove to DHS the "ongoing, good faith, reasonable efforts" to ensure fees are not paid and then prove extraordinary circumstances as to why fees were paid otherwise DHS will deny the employer's H-2 petition.  89 Fed. Reg. at 103211.

### *Violation of the Congressional Review Act*

36.    The Final Rule also violated the Congressional Review Act ("CRA").  The CRA prohibits the government from adopting a "new rule that is substantially the same" as one disapproved by Congress and that therefore did not "take effect."  5 U.S.C. § 801(b).

37.    In 2017, Congress disapproved and prevented from taking effect the Obama Administration's final governmentwide rule *Fair Play and Safe Workplaces*, which was otherwise known as the "blacklisting" rule.  H.R.J. Res. 37, 115th Cong. That rule would have required federal contractors to disclose adverse findings with respect to their compliance with federal and state labor and employment laws, and would have permitted federal agencies to deny contracts to employers who lacked, in their view, a satisfactory record of compliance.  81 Fed. Reg. 58562 (Aug. 25, 2016). The Biden Administration's Final Rule here is "substantially the same" as the "blacklisting" rule there insofar as it permits DHS to blacklist employers from participating in the H-2 program.  89 Fed. Reg. at 103332–33.  The Rule requires employers to disclose violations of federal, state, and local labor laws and permits USCIS to deny participation in the H-2 programs to those employers it deems—at its whim—to be insufficiently compliant.  *See* 8 CFR § 214.2(h)(10)(iv)(B); *see also* **Exhibit C** at 16–17, and **Exhibit D** at 17, hereto.  The Biden Administration in its waning days dusted off the Obama Administration's disapproved blacklisting rule and just applied it to a new subset of the American public it disfavored.

38.     Plaintiffs now seek vacatur and declaratory relief, as well as costs and attorney fees, and any other relief that may be just and proper.

## STANDING

39.     To establish standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), Plaintiffs must show (1) injury in fact, (2) causation, and (3) redressability.  A plaintiff "need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) (internal quotation marks omitted); *see Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) ("The relevant question for standing, however, is not whether relief is certain, but only whether it is likely, as opposed to merely speculative.").

40.     Plaintiffs bring this action on behalf of their members.  The interests Plaintiffs seeks to protect are germane to their organizational purpose, and neither the claims nor the relief requested require the participation of individual members; although some, if not all, of Plaintiffs' members would otherwise have standing to sue because they will suffer concrete injury if the illegal Final Rule is not set aside in the sense, *inter alia*, that each will have to endure extensive compliance costs to meet the strict liability requirements for fees paid by H-2 workers in the recruitment process of the Final Rule and will incur additional costs and time when filing H-2 petitions to attempt to comply with the new reporting requirements of "employment-related law" violations (including trying to figure out what laws are included) and responding to any attempt by Defendants to blacklist them from participation in the H-2 programs.

15

In addition, the Final Rule violates Plaintiffs' members' due process rights to the extent it is impermissibly vague and impermissibly retroactive as discussed herein.

41.     Plaintiffs' members include small and seasonal business across the United States that utilize the H-2 visa programs, farmers and ranchers, Farm Labor Contractors, H-2 filing agents, other trade associations, and attorneys who help users of the H-2 program to navigate the already overly bureaucratic H-2 programs.

42.     Plaintiffs' injuries would be redressed by vacatur of the Final Rule and declaratory relief that Defendants' Final Rule is *ultra vires*, arbitrary and capricious, contrary to constitutional right, power, privilege, or immunity, and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right because it is violative of the CRA, impermissibly vague on two counts, and impermissibly retroactive in effect.  5. U.S.C. § 706(2)(A)–(C).

### CLAIMS FOR RELIEF

### COUNT I
VIOLATION OF THE CONGRESSIONAL REVIEW ACT
Substantially the Same as Disapproved Rule

43.     Plaintiffs incorporate by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

44.     The CRA prohibits the government from adopting a "new rule that is substantially the same" as one disapproved by Congress and that therefore did not "take effect."  5 U.S.C. § 801(b).

45.     The Final Rule is "substantially the same" as the governmentwide blacklisting rule adopted by the Obama Administration and disapproved by Congress

16

and prevented from taking effect in 2017.  H.R.J. Res. 37, 115th Cong.; 81 Fed. Reg. 58562 (Aug. 25, 2016).

46.    The CRA is an amendment to and part of the APA.  The Final Rule should be held unlawful and set aside pursuant to the APA's judicial review provisions because it is "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2).

## COUNT II
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
#### Impermissible Retroactivity

47.    Plaintiffs incorporate by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

48.    "New regulations . . . have an impermissible retroactive effect where their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  *Gutierrez*, 443 F. App'x at 905–06.

49.    The Final Rule includes a three year look back period beginning on January 17, 2025, requiring employers to report any prior labor law violation.  *See* **Ex. C** at 16–17, and **Ex. D** at 17.

50.    This includes employers that decided to settle investigations for financial or other burden reasons instead of spending significant resources to fight a minor violation.

17

51.     This lookback period creates an impermissible retroactive rule, as employers had no indication that USCIS at some point in the future would make determinations to deny H-2 petitions based on prior activity that must now be reported in the petition.

52.     This retroactivity is, therefore, an "agency action" that is fundamentally and without question "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## COUNT III
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
Impermissible Vagueness as to Denials for Employment-Related Law Violations

53.     Plaintiffs incorporate by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

54.     "A law is unconstitutionally vague when it (1) fails to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly or (2) fails to provide explicit standards for applying the law to avoid arbitrary and discriminatory applications." *Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820, 849 (S.D. Tex. 2023) (cleaned up).

55.     The Final Rule is so vague as to the definition of "[a]ny final administrative or judicial determination . . . that the petitioner violated ***any*** applicable employment-related laws or regulations, including health and safety laws or regulations." 89 Fed. Reg. at 103333 (emphasis added).

56.     Plaintiffs in the comments to the Notice of Proposed Rulemaking ("NPRM") raised this issue of vagueness. DHS in the Final Rule ignored those

comments and left the procedure of denying H-2 petitions in an unworkable grey area allowing DHS extreme latitude to decide when an employer should be blacklisted from the H-2 programs.

57.    The lack of definition of what are labor law violations and nebulous procedure for denying an H-2 petition under this provision is, therefore, an "agency action" that is fundamentally and without question "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C § 706(2)(A).

### COUNT IV
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
#### Impermissible Vagueness as to Denials for Impermissible Fees

58.    Plaintiffs incorporate by reference the foregoing Paragraphs of this Complaint as if fully set forth herein.

59.    "A law is unconstitutionally vague when it (1) fails to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly or (2) fails to provide explicit standards for applying the law "to avoid arbitrary and discriminatory applications."  *Woodlands Pride,* 694 F. Supp. 3d at 849 (internal quotation marks omitted).

60.    The Final Rule is impermissibly vague as to the definition of what is considered "demonstrat[ing] 'ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement by such third parties throughout the recruitment, hiring, and employment process.'"

61.    Plaintiffs in the comments to the NPRM raised this issue of vagueness. DHS in the Final Rule ignored those comments and left the procedure of denying H-

19

2 petitions in an unworkable grey area allowing DHS extreme latitude in determining when an employer does or does not demonstrate ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement by such third parties throughout the recruitment, hiring, and employment process.

62.    The vague definition of "ongoing, good faith, reasonable efforts" and procedure for denying and H-2 petition under this provision is, therefore, an "agency action" that is fundamentally and without question "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray that this Court:

A.    Declare that the Final Rule violates the APA because it is impermissibly vague and retroactive;

B.    Declare that the Final Rule violates the CRA because it is substantially the same as a prior Congressionally disapproved governmentwide rule;

C.    Vacate the Final Rule in whole as an *ultra vires* action or otherwise because it does not comply with the requirements of the APA (including the CRA);

D.    Permanently enjoin Defendants from enforcing the Final Rule;

E.    Award Plaintiffs their costs and expenses, including reasonable attorneys' fees, whether under the Equal Access to Justice Act, 28 U.S.C. § 2412, or otherwise; and

F.    Award such further and additional relief as is just and proper.

Respectfully submitted,

January 19, 2025                    **/s/ David R. Dorey**
                                   David R. Dorey, attorney-in-charge
                                   Washington D.C. Bar No. 1015586
                                   S.D. Tex. Bar No. 3905240
                                   LIFF, WALSH & SIMMONS
                                   181 Harry S. Truman Parkway, Suite 200
                                   Annapolis, Maryland 21401
                                   Phone: (410) 266-9500
                                   Email: ddorey@liffwalsh.com

                                   Shawn M. Packer (*pro hac vice forthcoming*)
                                   Fla. Bar No. 90485
                                   JPH LAW FIRM
                                   733 10th Street, NW, Suite 900
                                   Washington, DC 20001
                                   Phone: (202) 629-9310
                                   Email: spacker@jphlawfirm.com

                                   *Counsel for Plaintiffs*