# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| FEDERATION OF EMPLOYERS AND WORKERS OF AMERICA, et al., | |
| *Plaintiffs,* | |
| v. | **Case No. 3:25-cv-14** |
| KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, et al., | |
| *Defendants.* | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

David R. Dorey
Washington D.C. Bar No. 1015586
S.D. Tex. Bar No. 3905240
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway, Suite 200
Annapolis, Maryland 21401
Email: ddorey@liffwalsh.com

Shawn M. Packer (*pro hac vice*)
Fla. Bar No. 90485
JPH LAW FIRM
733 10th Street, NW, Suite 900
Washington, DC 20001
Email: spacker@jphlawfirm.com

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.....................................1

BACKGROUND AND NATURE AND STAGE OF PROCEEDING.................3

LEGAL STANDARD................................................................................6

ARGUMENT ............................................................................................9

   I.   PLAINTIFFS HAVE STANDING TO CHALLENGE THE FINAL
       RULE ..............................................................................................9

   II.  THE FINAL RULE IS IMPERMISSIBLY RETROACTIVE
       (COUNT II) ...................................................................................11

   III. THE FINAL RULE IS IMPERMISSIBLY VAGUE.............................14

     A. The Final Rule Permits Vague Discretionary Enforcement Based
        on Wholly Undefined Labor Law Violations (Count III) .................14

     B. The Final Rule Imposes Vague Compliance Standards for Fee
        Collection Liability (Count IV)....................................................18

   IV. THE FINAL RULE VIOLATES THE CONGRESSIONAL REVIEW
       ACT (COUNT I) ...........................................................................20

CONCLUSION...............................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Bennett v. Donovan,*
703 F.3d 582 (D.C. Cir. 2013) ....................................................................... 9

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988) ....................................................................... 8, 11, 14

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) ....................................................................... 7

*El Paso Elec. Co. v. FERC,*
76 F.4th 352 (5th Cir. 2023) ....................................................................... 13, 18

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ....................................................................... 15, 18, 20

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ....................................................................... 16

*Handley v. Chapman,*
587 F.3d 273 (5th Cir. 2009) ....................................................................... 12

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ....................................................................... 6

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ....................................................................... 9

*Mock v. Garland,*
2024 U.S. Dist. LEXIS 105230 (N.D. Tex. June 13, 2024) ....................... 17

*Pimentel v. Mukasey,*
530 F.3d 321 (5th Cir. 2008) ....................................................................... 12

*Rest. L. Ctr. v. DOL,*
120 F.4th 163 (5th Cir. 2024) ....................................................................... 7

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ........................................................ 17–18, 20

*Sanchez v. R.G.L.*,
    761 F.3d 495 (5th Cir. 2014) ................................................................. 9

*Tex. Clinical Labs, Inc. v. Sebelius*,
    612 F.3d 771 (5th Cir. 2010) ................................................................ 6

*United Nat. Foods, Inc. v. NLRB*,
    138 F.4th 937 (5th Cir. 2025) ............................................................... 7

*United States v. Gutierrez*,
    443 F. App'x 898 (5th Cir. 2011) ........................................................ 12

*Van Loon v. DOT*,
    122 F.4th 549 (5th Cir. 2024) .............................................................. 7

**Statutes**

5 U.S.C. § 551 ............................................................................................ 13

5 U.S.C. §§ 701–06 ..................................................................................... 1

5 U.S.C. § 702 ............................................................................................. 9

5 U.S.C. § 706 .................................................................................... *passim*

6 U.S.C. § 202 ........................................................................................ 8, 14

8 U.S.C. § 1101 .................................................................................. 1, 8, 13

8 U.S.C. § 1184 ..................................................................................... 8, 13

8 U.S.C. § 1188 ..................................................................................... 8, 13

Pub. L. No. 107-296, 116 Stat. 2135 ....................................................... 8, 13

**Regulations**

8 C.F.R. § 214.2 .................................................................................... 2, 16

88 Fed. Reg. 65040 (Sept. 9, 2023) ..................................................... 2

89 Fed. Reg. 103202 (Dec. 18, 2024) ........................................*passim*

**Other Authorities**

UNITED STATES DEPARTMENT OF LABOR, *Summary of the Major Laws of the Department of Labor*, https://www.dol.gov/general/aboutdol/majorlaws [https://perma.cc/AB42-EAC7]. ...................................................... 15

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and chapter seven of the Administrative Procedure Act ("APA"),[1] Plaintiffs Federation of Employers and Workers of America, the Seasonal Employer Alliance, the National Association of Landscape Professionals, the National Council of Agriculture Employers, and the Outdoor Amusement Business Association, ("Plaintiffs") respectfully move the Court for summary judgment as to Counts II–IV of the Complaint and ask the Court to hold unlawful and set aside the Department of Homeland Security's ("DHS") Final Rule entitled *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, published at 89 Fed. Reg. 103202 (Dec. 18, 2024) (hereinafter "Final Rule").  This motion is based on the accompanying argument and the declarations of representatives of each of the five Plaintiffs filed herewith.  Pursuant to LR7.5, Plaintiffs request oral argument on this motion.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Final Rule imposes sweeping changes on the H-2A and H-2B visa programs.[2]  These changes exceed DHS's statutory authority and violate fundamental principles of due process.  They are *ultra vires*, short of statutory right, and arbitrary and capricious.  The Final Rule is unlawful because: (1) it expressly and impermissibly applies retroactively to actions employers took

[1] 5 U.S.C. §§ 701–06.

[2] *E.g.*, 8 U.S.C. § 1101(a)(15)(H).

1

prior to the Final Rule even being proposed as a Notice of Proposed Rulemaking ("NPRM"),[3] purporting to allow DHS to deny H-2 petitions based on "labor law" violations employers resolved *years* in advance of this Final Rule being proposed or adopted; (2) it is impermissibly vague in both its discretionary enforcement mechanisms and compliance standards because DHS can deny petitions from would-be employers of H-2 workers for any resolved violation of a "labor law" at the federal, state, or local level if DHS decides that such violation proves that the employer does not intend or have the ability to comply with H-2A or H-2B program requirements (even though that violation did not lead to debarment from the H-2 programs);[4] (3) it imposes a completely vague requirement on employers to "ma[k]e ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement by its employees throughout the recruitment, hiring, and employment process"[5] (even stating that quasi-governmental entities working with foreign Ministries of Labor could cause violations)[6]; and (4) it was

---

[3] NPRM entitled *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, published at 88 Fed. Reg. 65040 (Sept. 9, 2023).

[4] *See* 8 C.F.R. § 214.2(h)(10)(iv)(B).

[5] 8 C.F.R. § 214.2(h)(6)(i)(B)(1).

[6] 89 Fed. Reg. at 103211, 103228; *see also* Complaint, Exhibit A, ECF No. 1-1 (official statement of the Ministry of Labor for Guatemala on the resolution of a situation that a Government of Guatemala employee was charging fees for individuals to be recruited into the USAID sponsored recruitment program).

promulgated in violation of the Congressional Review Act ("CRA")[7] because it is substantially similar to the rule *Fair Play and Safe Workplaces* that was disapproved by Congress and so did not take effect.  H.R.J. Res. 37, 115th Cong. (2016).

Plaintiffs and their members are harmed by the Final Rule and have standing to challenge it.  Their injuries would be redressed if the Final Rule was set aside.

No material facts are in dispute. The Final Rule should be held unlawful and set aside pursuant to 5 U.S.C. § 706(2).

## BACKGROUND AND NATURE AND STAGE OF PROCEEDING

The Final Rule, effective January 17, 2025, imposes new eligibility restrictions on employers based on past adjudications of undefined "employment-related laws" at DHS's discretion to determine an employer's intent and/or ability to comply with H-2 program requirements and creates strict liability for fees paid by H-2 workers to any person or entity in the recruitment chain, including foreign or quasi-governmental officials. 89 Fed. Reg. at 103211, 103333; *see also* Complaint, Exhibit A, ECF No. 1-1 (official statement of the Ministry of Labor for Guatemala on the resolution of a

---

[7] Plaintiffs acknowledge that this Court dismissed their CRA claim and include any brief arguments related thereto here for preservation purposes only.  ECF No. 18.

situation that a Government of Guatemala employee was charging illegal fees to be recruited into the USAID sponsored recruitment program).  In addition, the Rule applies a retroactive three-year lookback period for undefined labor law violations that allows DHS unbounded discretion to determine if an employer has the intent to comply with the H-2 program requirements, all the while failing to explain ***how*** DHS will make the determination to deny a petition based on past activity that occurred prior to the Final Rule even being proposed or introduced.  89 Fed. Reg. at 103254; Administrative Record ("AR") DEF_000183–DEF_000316.

Plaintiffs, who are national trade associations representing thousands of seasonal and agricultural employers, challenged the Final Rule under the APA on January 19, 2025.  Plaintiffs asserted four counts in their Complaint challenging the Final Rule: (1) it violates the Congressional Review Act because it is substantially similar to a previous Congressionally disapproved rule; (2) it violates the APA because it is impermissibly retroactive in allowing DHS to deny petitions based on actions taken before the Final Rule's effective date; (3) it violates the APA because it is impermissibly vague as to discretionary denials for past "labor law" violations without even explaining what "labor law" violations count; and (4) it violates the APA because it is impermissibly vague as to the due diligence standard employers must meet to

avoid denials for impermissible fees H-2 workers may pay for the opportunity to work in the United States.

Defendants filed a Partial Motion to Dismiss only Count I of Plaintiff's Complaint on March 24, 2025, asserting that the CRA does not permit judicial review. ECF No. 10. Plaintiffs filed an Opposition on April 14, 2025, arguing that this Court has jurisdiction to review and set aside a rulemaking that is substantially similar to a rulemaking that was disapproved by Congress. ECF No. 13 at 10–11. Plaintiffs and Defendants filed a Joint Discovery/Case Management Plan on May 5, 2025, setting the briefing schedule for Summary Judgment and assigning a time for Defendnants to produce the Administrative Record. ECF No. 15. On June 3, 2025, this Court dismissed Count I of the Complaint. ECF No. 18. On June 16, 2025, Defendants filed an Answer to the Complaint. ECF No. 19. Plaintiff and Defendant met and conferred about the production of the Administrative Record and Defendants filed a Motion to Manually File the Administrative Record on June 26, 2025. ECF No. 20. This Court granted that motion on June 27, 2025. ECF No. 21. Defendants provided to this Court and Plaintiffs the Administrative Record on June 27, 2025. ECF No. 22. This action is now ready for briefing on cross motions for summary judgment.

## LEGAL STANDARD

In APA cases, summary judgment is the appropriate mechanism for resolving legal disputes about the validity of an agency action. *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) ("The agency's purely legal questions are reviewed de novo, giving deference to the agency's interpretation of the statute and regulations as appropriate.") (cleaned up). The APA instructs courts to "hold unlawful and set aside agency action" that is: (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or (2) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2)(A), (C).

With the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), abrogating *Chevron*, courts no longer defer to agencies on legal questions: "Perhaps most fundamentally, *Chevron*'s presumption is misguided because agencies have no special competence in resolving statutory ambiguities. Courts do." 603 U.S. at 400–01; *see also id.* at 401 ("The very point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities. That is no less true when the ambiguity is about the scope of an agency's own power—perhaps the occasion on which abdication in favor of the agency is least appropriate."). As the Fifth Circuit subsequently explained: "In *Loper Bright*, the Supreme Court clarified the unremarkable, yet elemental proposition reflected in

6

judicial practice dating back to *Marbury* that courts decide legal questions by applying their own judgment, even in agency cases. *Van Loon v. DOT*, 122 F.4th 549, 563 (5th Cir. 2024) (cleaned up); *see also United Nat. Foods, Inc. v. NLRB*, 138 F.4th 937, 946 (5th Cir. 2025) ("Following *Loper Bright*, we no longer accord such deference. We must instead exercise our independent judgment in deciding whether an agency has acted within its statutory authority.") (cleaned up).

"An agency rule is arbitrary and capricious if: the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Rest. L. Ctr. v. DOL*, 120 F.4th 163, 175 (5th Cir. 2024) (citation omitted). "Even without *Chevron*, we understand that courts are still to conduct a similar arbitrary-and-capricious analysis in fixing the boundaries of delegated authority and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id.*

Judicial review is confined to the "whole record" before the agency at the time of its decision. 5 U.S.C. § 706; *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the full administrative record that was before the Secretary at the time he made his decision.").

Accordingly, the Court's role is limited to ensuring that the agency engaged in reasoned decisionmaking and acted within the bounds of its statutory authority. "[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

Among other policy reasons, Congress enacted the Immigration and Nationality Act ("INA"), and its subsequent amendments, to regulate and control the process of admitting temporary foreign workers to the United States to perform temporary labor or services. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); *see also* 8 U.S.C. §§ 1184(c)(1), 1188. The INA charged the Attorney General with the determination of admitting non-citizens into the United States and subsequently the Homeland Security Act of 2002 ("HSA") transferred that authority to the Secretary of Homeland Security and created DHS. Pub. L. No. 107-296, 116 Stat. 2135. The HSA charges DHS with "[e]stablishing and administering rules . . . governing the granting of visas . . . to enter the United States to individuals who are not a citizen or an alien lawfully admitted for permanent residence in the United States." 6 U.S.C. § 202(4).

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING TO CHALLENGE THE FINAL RULE

To establish standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), Plaintiffs must show (1) injury in fact, (2) causation, and (3) redressability. A plaintiff "need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) (cleaned up); *see Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) ("The relevant question for standing, however, is not whether relief is certain, but only whether it is likely, as opposed to merely speculative."). "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

Plaintiffs bring this action on behalf of their members. *See* Decl. of Michael Marsh ¶¶ 4–7 (NCAE), attached hereto; Decl. of Andrew Bray ¶¶ 3–6 (NALP), attached hereto; Decl. of Greg Chiecko ¶¶ 3–7 (OABA), attached hereto; Decl. of Roger Warren ¶¶ 3–5 (SEA), attached hereto; Decl. of Arnulfo Hinojosa ¶¶ 5–8 (FEWA), attached hereto. The interests Plaintiffs seeks to protect are germane to their organizational purpose, and neither the claims nor the relief requested require the participation of individual members;

although some, if not all, of Plaintiffs' members would otherwise have standing to sue because they are suffering and will continue to suffer concrete injury if the illegal Final Rule is not set aside in the sense, *inter alia*, that each have to endure extensive compliance costs to meet the strict liability requirements for fees paid by H-2 workers in the recruitment process of the Final Rule and incur additional costs and time when filing H-2 petitions to attempt to comply with the new reporting requirements of "employment-related law" violations (including trying to divine what laws are included) and responding to any attempt by Defendants to blacklist them from participation in the H-2 programs. Marsh Decl. ¶¶ 8–13; Bray Decl. ¶¶ 7–12; Chiecko Decl. ¶¶ 9–14; Warren Decl. ¶¶ 6–11; Hinojosa Decl. ¶¶ 9–14.

In addition, the Final Rule violates Plaintiffs' members' due process rights to the extent it is impermissibly vague and impermissibly retroactive as discussed herein. Plaintiffs' injuries would be redressed by the Court setting aside the Final Rule and declaring that Defendants' Final Rule is *ultra vires*, arbitrary and capricious, contrary to constitutional right, power, privilege, or immunity, and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right because it is impermissibly vague on two counts, and impermissibly retroactive in effect. 5. U.S.C. § 706(2)(A)–(C).

In addition, the Final Rule violates Plaintiffs' members' due process rights to the extent it is impermissibly vague and impermissibly retroactive as

discussed herein. Plaintiffs' injuries would be redressed by vacatur of the Final Rule and declaratory relief that Defendants' Final Rule is *ultra vires*, arbitrary and capricious, contrary to constitutional right, power, privilege, or immunity, and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right because it violates the APA as an impermissibly vague Final Rule on two counts, and impermissibly retroactive in effect. 5. U.S.C. § 706(2)(A)–(C).

## II.   THE FINAL RULE IS IMPERMISSIBLY RETROACTIVE (COUNT II)

The Final Rule's express requirement that employers disclose and face disruptive consequences for resolved labor law violations up to three years prior to the Rule's effective date is unlawfully retroactive. 89 Fed. Reg. at 103333. Retroactivity is disfavored in agency actions and to be lawful requires clear congressional authorization. *Bowen*, 488 U.S. at 208 ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms."). In *United States v. Gutierrez*, the Fifth Circuit affirmed that new agency rules are impermissibly retroactive when they impose new liabilities for past conduct: "The conclusion that a particular rule operates retroactively comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of

11

connection between the operation of the new rule and a relevant past event. In making this determination, we are guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." 443 F. App'x 898, 905 (5th Cir. 2011); *see also Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009) ("A new regulation has an impermissible retroactive effect where its application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.") (cleaned up).

The Final Rule imposes new burdens—including disclosure requirements, documentation, and potential H-2 petition denial—based on past, completed conduct. 89 Fed. Reg. at 103253; Bray Decl. ¶ 12; Hinojosa Decl. ¶ 14; Marsh Decl. ¶ 14; Warren Decl. ¶ 11; Chieko Decl. ¶ 14. "There is a retroactive effect when the new regulation takes away or impairs vested rights creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Pimentel v. Mukasey*, 530 F.3d 321, 326 (5th Cir. 2008) (cleaned up). Many employers reasonably settled disputes about labor laws prior to the promulgation of the Final Rule never anticipating that doing so could disqualify them from participation in the H-2 program. 89 Fed. Reg. at 103255 ("[T]hese provisions will apply to H-2A or H-2B petitions that are filed on or after the effective date of this rule based on determinations of past violations that occurred during the

12

pendency of the petition or the previous 3 years, regardless of whether they occurred before, on, or after the effective date of this final rule."); Bray Decl. ¶ 12; Hinojosa Decl. ¶ 14; Marsh Decl. ¶ 14; Warren Decl. ¶ 11; Chieko Decl. ¶ 14.  The Final Rule in that respect is not a permissible use of rulemaking authority.  *Cf. El Paso Elec. Co. v. FERC*, 76 F.4th 352, 366 (5th Cir. 2023) (A "wait-and-see suggestion confuses adjudication—which is retroactive . . .— with rulemaking, which is of only future effect."); *and see* 5 U.S.C. § 551(4) ("'[R]ule' means the whole or a part of an agency statement of general or particular applicability ***and future effect*** designed to implement, interpret, or prescribe law.") (emphasis added).

As mentioned, Congress enacted the INA and its subsequent amendments to regulate and control the process of admitting certain foreign workers to the United States to perform temporary labor or services.  8 U.S.C. § 1101(a)(15)(H)(ii); *see also* 8 U.S.C. §§ 1184(c)(1), 1188.  The subsequent passage of the HSA created DHS and transferred the Attorney General's authority to the Secretary of Homeland Security.  *See* HSA, Pub. L. No. 107-296, 116 Stat. 2135.

The Final Rule relies on section 101 of the HSA to claim its retroactive effect is permissible because DHS is charged with ensuring the general "economic security" of the United States.  89 Fed. Reg at 103203.  That is a *non sequitur*.  That broad statement of mission grants no authority to promulgate

13

retroactive rules. Instead, DHS has garden variety non-retroactive rulemaking authority. 6 U.S.C. § 202(4) ("The Secretary shall be responsible for . . . [e]stablishing and administering rules . . . governing the granting of visas . . . to enter the United States to individuals who are not a citizen or an alien lawfully admitted for permanent residence in the United States."). As the Supreme Court in *Bowen* noted, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in ***express terms***." 488 U.S. at 208 (emphasis added). Congress never gave retroactive rulemaking power to the Secretary of Homeland Security via the INA or HSA. Thus, the retroactive Final Rule violates the APA and the requirements of due process. 5 U.S.C. § 706(2).

## III.   THE FINAL RULE IS IMPERMISSIBLY VAGUE

### A.   The Final Rule Permits Vague Discretionary Enforcement Based on Wholly Undefined Labor Law Violations (Count III)

The Final Rule purports to authorize USCIS to deny H-2 petitions based on any "final administrative or judicial determination" that the petitioning employer violated "employment-related laws or regulations." 89 Fed. Reg. at 103333. The Final Rule does not define the term "employment-related laws or

regulations" or identify the universe of laws it purports to encompass.[8]  This violates due process because it fails to provide fair notice to the regulated public.  "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The Final Rule's vague reference to "employment-related laws or regulations" wholly fails to give employers fair notice of both what they must disclose and what even counts as prohibited potentially perilous conduct respecting their participation in the H-2 programs.  This is a recipe for arbitrary and discriminatory enforcement.  And it is a violation of the Plaintiffs' and their membership's due process rights.

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly

---

[8] The United States Department of Labor alone "administers and enforces more than 180 federal laws."  UNITED STATES DEPARTMENT OF LABOR, *Summary of the Major Laws of the Department of Labor*, https://www.dol.gov/general/aboutdol/majorlaws    [https://perma.cc/AB42-EAC7].  And there are of course other federal labor laws not enforced by DOL and a vast patchwork of state and local labor laws across the country.

> delegates basic policy matters to policemen, judges,
> and juries for resolution on an ad hoc and subjective
> basis, with the attendant dangers of arbitrary and
> discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

The Final Rule also chills legitimate conduct—such as settling disputes

to avoid the costs and other burdens of litigation—due to uncertainty over what

"may" trigger enforcement, which is a hallmark of unconstitutional vagueness.

*Id.* at 253–54 ("Regulated parties should know what is required of them so they

may act accordingly; and precision and guidance are necessary so that those

enforcing the law do not act in an arbitrary or discriminatory way.").

Even worse, the Final Rule incorporates a nebulous, non-exhaustive,

eight-factor test, both imparting no clarity and inviting arbitrary enforcement.

8 C.F.R. § 214.2(h)(10)(iv)(C)[9]; *see also* 89 Fed. Reg. 103256 (describing

---

[9] "In determining whether the underlying violation(s) in paragraph
(h)(10)(iv)(B) of this section calls into question the intention and/or ability of
the petitioner or its successor in interest to comply with H-2A or H-2B program
requirements, USCIS will consider all relevant factors, including, but not
limited to:
(1) The recency and number of violations;
(2) The egregiousness of the violation(s), including how many workers were
affected, and whether it involved a risk to the health or safety of workers;
(3) Overall history or pattern of prior violations;
(4) The severity or monetary amount of any penalties imposed;
(5) Whether the final determination, decision, or conviction included a finding
of willfulness;
(6) The extent to which the violator achieved a financial gain due to the
violation(s), or the potential financial loss or potential financial injury to the
workers;

inclusion of a **non-exhaustive** list of eight factors and that DHS may provide
additional enforcement **guidance** in the future, not rulemaking).  *See Mock v.
Garland,* No. 4:23-cv-00095, 2024 U.S. Dist. LEXIS 105230 at *14 (N.D. Tex.
June 13, 2024)

> Moreover, the Court finds that the standards set forth
> in the Final Rule are impermissibly vague. . . . the
> Final Rule vests the ATF with complete discretion to
> use a subjective balancing test to weigh six opaque
> factors on an invisible six factor test is so
> impermissibly vague that it provides no meaningful
> clarity about what constitutes an impermissible
> stabilizing brace, and, thus, that it is nigh impossible
> for a regular citizen to determine what constitutes a
> braced pistol that requires NFA registration.

(cleaned up).

The Fifth Circuit has repeatedly cautioned against vague laws that leave
even people of "ordinary intelligence" confused as to what is required and that
provides no guardrails limiting the enforcing agencies—allowing for arbitrary
and discriminatory determinations.  *Roark & Hardee LP v. City of Austin*, 522
F.3d 533, 551 (5th Cir. 2008) ("In evaluating vagueness, a reviewing court
should consider: (1) whether the law gives the person of ordinary intelligence
a reasonable opportunity to know what is prohibited, so that he may act

---

(7) Timely compliance with all penalties and remedies ordered under the final
determination(s), decision(s), or conviction(s); and
(8) Other corrective actions taken by the petitioner or its successor in interest
to cure its violation(s) or prevent future violations."

accordingly; and (2) whether the law provides explicit standards for those applying them to avoid arbitrary and discriminatory applications.") (cleaned up)*; see also Fox Television*, 567 U.S. at 255 ("[T]he due process protection against vague regulations does not leave [regulated] parties . . . at the mercy of *noblesse oblige*.") (cleaned up).  Here, DHS has provided a non-exhaustive list of what it says might warrant denial of an employer's H-2 petition and also says it might clean up the obvious problem through guidance.  But "agencies cannot play the administrative law shell-game of offering future rulemaking as a response to a claim of agency illegality." *El Paso Elec. Co.*, 76 F.4th at 366 (cleaned up).  The Final Rule fails to provide fair notice and it can't be fixed in the future.  It is impermissibly vague and meets both prongs of *Roark*.

### B.    The Final Rule Imposes Vague Compliance Standards for Fee Collection Liability (Count IV)

The Final Rule also imposes liability and denial of petitions if H-2 workers pay recruitment fees to any person, including foreign government agents.   Under the Final Rule, employers must demonstrate "ongoing, reasonable, good faith efforts" to prevent fee collection.  89 Fed. Reg. at 103211.  Yet the Final Rule offers no meaningful standard for what satisfies this requirement—what is "ongoing," what is "reasonable," and what is "good faith."   The Final Rule's application to USAID-sponsored recruitment programs in Guatemala, Honduras, and El Salvador—programs officially

18

endorsed by the U.S. government and known to have foreign government employees charging a fee for recruitment services—highlights the compliance impossibility. *See* Complaint, Exhibit A, ECF No. 1-1; Bray Decl. ¶¶ 10–11; Hinojosa Decl. ¶¶ 12–13; Marsh Decl. ¶¶ 11–12; Warren Decl. ¶¶ 9–10; Chieko Decl. ¶¶ 12–13. The government cannot be permitted to penalize employers for using official programs it promotes, particularly when the governing standard is undefined. Plaintiffs even cautioned DHS about their initial proposal of requiring "due diligence" in determining if recruitment fees have been paid, and DHS addressed this by adding an even more convoluted definition of "on-going, reasonable, good faith efforts" as the response to the Plaintiffs cautioning. AR at USCIS-2023-0012-0019 (comment of the H-2B Workforce Coalition of which NALP, SEA, and OABA are members); AR at USCIS-2023-0012-1874 (comments of NCAE). Further, if DHS finds that a fee has been paid for recruitment, even to a USAID-sponsored government employee, the Final Rule requires the employer to reimburse the employee all fees paid. 89 Fed. Reg. at 103218.

DHS also fails to explain how it will determine that a fee was paid and what amount of evidence would trigger the reimbursement requirement or the denial of petitions. This effectively leaves employers to decide unilaterally what "ongoing, reasonable, good faith efforts" then allows DHS to decide, however capriciously, when an employer has not met this vague standard.

This is a quintessentially vague regulation. *See Fox Television*, 567 U.S. at 253–54 ("Regulated parties should know what is required of them so they may act accordingly; and ***precision and guidance are necessary*** so that those enforcing the law do not act in an arbitrary or discriminatory way.") (emphasis added); *see also Roark*, 522 F.3d at 551.

## IV.    THE FINAL RULE VIOLATES THE CONGRESSIONAL REVIEW ACT (COUNT I)

Plaintiffs previously briefed the Court on their view that the Final Rule violates the Congressional Review Act. ECF No. 13. Plaintiffs incorporate that argument here by reference for preservation purposes only.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court:

1. Grant this Motion for Summary Judgment;

2. Declare the Final Rule unlawful in violation of the Administrative Procedure Act and set it aside;

3. Enjoin DHS from enforcing the Final Rule; and

4. Award such further relief as the Court deems just and proper.

20

Respectfully submitted,

July 25, 2025

**s/ David R. Dorey**
David R. Dorey, attorney-in-charge
Washington D.C. Bar No. 1015586
S.D. Tex. Bar No. 3905240
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, Maryland 21401
Phone: (410) 266-9500
Email: ddorey@liffwalsh.com

Shawn M. Packer (*pro hac vice*)
Fla. Bar No. 90485
JPH LAW FIRM
733 10th Street, NW, Suite 900
Washington, DC 20001
Phone: (202) 629-9310
Email: spacker@jphlawfirm.com

*Counsel for Plaintiffs*

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document was filed and served on counsel of record through the Court's CM/ECF system.

July 25, 2025

**s/ David R. Dorey**
David R. Dorey, attorney-in-charge
Washington D.C. Bar No. 1015586
S.D. Tex. Bar No. 3905240
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, Maryland 21401
Phone: (410) 266-9500
Email: ddorey@liffwalsh.com

*Counsel for Plaintiffs*