## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| FEDERATION OF EMPLOYERS AND WORKERS OF AMERICA, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL NO. 3:25-cv-14 |
| KRISTI NOEM[1], IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY, *et al.*, | § § § § § | |
| Defendants. | § § | |

### DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMMARY JUDGMENT

Dated: September 19, 2025

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Natasha Alexander
Assistant United States Attorney
Southern District No. 3770021
Texas Bar No. 24125476
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
myra.siddiqui@usdoj.gov
natasha.alexander@usdoj.gov

---

[1] Per Federal Rule of Civil Procedure 25(d), the successor Secretary of Homeland Security and Director of USCIS is automatically substituted as a party.

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ...........................................................................1

ISSUES PRESENTED ..........................................................................................................1

SUMMARY OF THE ARGUMENT.....................................................................................2

STATUTORY BACKGROUND .........................................................................................2

STANDARD OF REVIEW ..................................................................................................5

ARGUMENT ........................................................................................................................6

    I.    The Congressional Review Act claim has been dismissed for lack of jurisdiction (Count I) ............................................................................................................6

    II.   The Final Rule is not impermissibly retroactive (Count II) .............................7

    III.  The Final Rule's discretionary denial provisions are not impermissibly vague (Count III) ..........................................................................................................11

       A. Plaintiffs had fair notice of the phrase "employment-related laws", because it is used throughout the regulations and in H-2 program application forms certified by employers.......................................................................................................12

       B.   The Final Rule provides objective guidance preventing arbitrary enforcement ......14

    IV.  The Final Rule provisions regarding prohibited fees are not impermissibly vague (Count VI).........................................................................................................17

    V.   To the extent Plaintiffs are entitled to relief, severability of such sections is appropriate........................................................................................................21

CONCLUSION ...................................................................................................................23

CERTIFICATE OF SERVICE ...........................................................................................24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ass'n of Accredited Cosmetology Sch. v. Alexander,*
  979 F.2d 859 (D.C. Cir. 1992)................................................................8

*A.B. Small Co. v. Am. Sugar Refining Co.,*
  267 U.S. 233 (1925)........................................................................11

*Adm'rs of Tulane Educ. Fund v. Shalala,*
  987 F.2d 790 (D.C. Cir. 1993)................................................................8

*Arkema Inc. v. EPA,*
  618 F.3d 1 (D.C. Cir. 2010) ...........................................................9, 13

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  591 U.S. 610 (2020)........................................................................22

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) ....................................................................7, 19

*City of El Cenizo, Texas v. Texas,*
  890 F.3d 164 (5th Cir. 2018) .........................................................12, 14

*Deering Milliken v. OSHRC,*
  630 F.2d 1094 (5th Cir. 1980) ............................................................17

*Doe I v. Landry,*
  909 F.3d 99 (5th Cir. 2018) ..........................................................12, 20

*Exxon Corp. v. Busbee,*
  644 F.2d 1030 (5th Cir.1981) .............................................................11

*FCC v. Fox Television Stations*, Inc.,
  567 U.S. 239 (2012) ......................................................................12

*Johnson v. United States,*
  576 U.S. 591 (2015) .................................................................12, 14

*Landgraf v. USI Film Prods.,*
  511 U.S. 244 (1994) .......................................................................8

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024).........................................................................6

*Magee v. City of S. Padre Island,*
  463 F. App'x 377 (5th Cir. 2012)..........................................................11

*MD/DC/DE Broads. Ass'n v. FCC,*
  236 F.3d 13 (D.C. Cir. 2001)..............................................................21

*Minnesota Voters All. v. Mansky,*
  585 U.S. 1 (2018) ........................................................................17

*Mobile Relay Assocs. v. F.C.C.,*
  457 F.3d 1 (D.C. Cir. 2006)................................................................7

*Nat'l Ass'n of Manufacturers v. United States Sec. & Exch. Comm'n,*
  105 F.4th 802 (5th Cir. 2024) .......................................................21, 22

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) ........................................................................................11
*Onpath Fed. Credit Union v. United States Dep't of Treasury*,
   73 F.4th 291 (5th Cir. 2023) ...........................................................................20
*Pine Tree Med. Assocs. v. Sec'y of Health & Hum. Servs.*,
   127 F.3d 118 (1st Cir. 1997) .............................................................................8
*Rest. L. Ctr. v. United States DOL*,
   120 F.4th 163 (5th Cir. 2024) ...........................................................................6
*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) ..............................................................11, 12, 20
*Rost v. United States*,
   No. 1:19-CV-0607-RP, 2021 WL 5190875 (W.D. Tex. Sept. 22, 2021) ...............17
*Ryder Truck Lines, Inc. v. Brennan*,
   497 F.2d 230 (5th Cir. 1974) ...........................................................................19
*Shell Offshore Inc. v. Babbitt*,
   238 F.3d 622 (5th Cir. 2001) .............................................................................6
*Texas v. EPA*,
   389 F. Supp. 3d 497 (S.D. Tex. 2019) ...............................................................6
*Texas v. United States*,
   126 F.4th 392 (5th Cir. 2025) .........................................................................21
*United States v. Clinical Leasing Serv., Inc.*,
   925 F.2d 120 (5th Cir. 1991) ...........................................................................11
*United States v. Williams*,
   553 U.S. 285 (2008) ........................................................................................17
*Vanco Constr. v. Donovan*,
   723 F.2d 410 (5th Cir. 1984) ...........................................................................17
*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ........................................................................................11
*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ........................................................................................12

## Statutes

5 U.S.C. § 706(2)(a) ...................................................................................................6
6 U.S.C. § 111(b)(1)(F) ..............................................................................................3
6 U.S.C. § 202 ............................................................................................................3
6 U.S.C. § 236(b) .......................................................................................................3
6 U.S.C. § 557 ............................................................................................................4
8 U.S.C. § 1184(a)(1) .............................................................................................4, 7
8 U.S.C. § 1184(c)(1) .................................................................................................3
29 U.S.C. § 201 ........................................................................................................14

## Rules

Fed. R. Civ. P. 56 ......................................................................................................6

Fed. R. Civ. P. 25(d) ..................................................................................................................i
Fed. R. Civ. P. 56(a) .................................................................................................................5

**Regulations**

8 C.F.R. §§ 214.2(h)(5)(i) ..........................................................................................................4
8 C.F.R. § 214.2(h)(6)(iv) .........................................................................................................4
20 C.F.R. § 655.1305(e)(1) ......................................................................................................12
20 C.F.R. § 655.20(z) ..............................................................................................................12
20 C.F.R. § 655 .......................................................................................................................14
29 C.F.R. § 503 .......................................................................................................................14

**Other Authorities**

88 Fed. Reg. 65040 (Sept. 20, 2023) ..........................................................................4, 9, 16, 17
89 Fed. Reg. 103202 (Dec. 18, 2024) ..................................................................................passim
Pub. L. No. 82-414 ....................................................................................................................3
Pub. L. No. 99-603 ....................................................................................................................3
Pub. L. No. 107-296 ..................................................................................................................3

Defendants Kristi Noem, Secretary of Homeland Security; United States Department of Homeland Security ("DHS"); Joseph B. Edlow, in his official capacity as Director of United States Citizenship and Immigration Services; and United States Citizenship and Immigration Services ("USCIS") (together, "Defendants") respond to Plaintiffs' motion for summary judgment and respectfully move for summary judgment pursuant to Rule 56 on the remaining claims in this lawsuit, which are Counts II, III, and IV.

## NATURE AND STAGE OF PROCEEDING

This case involves the H-2A and H-2B nonimmigrant visa classifications, which were established by the Immigration and Nationality Act ("INA") to allow a visa to be issued to aliens to perform temporary labor or services if domestic workers cannot be found to do so. Plaintiffs bring suit under the Administrative Procedure Act ("APA") to challenge the Final Rule issued on December 18, 2024, by DHS as impermissibly retroactive and vague. This case is limited to the administrative record and should be decided by motion(s) for summary judgment. Plaintiffs moved for summary judgment. *See* Dkt. 26. Defendants now file a response and cross-motion for summary judgment.

## ISSUES PRESENTED

1. Is the Final Rule impermissibly retroactive? (Count II)

2. Are the Final Rule's provisions on discretionary denials involving employment-related law violations impermissibly vague? (Count III)

3. Is the Final Rule's prohibited fee provision impermissibly vague? (Count IV)

## SUMMARY OF THE ARGUMENT

On December 18, 2024, DHS issued a Final Rule, *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, 89 Fed. Reg. 103202 (Dec. 18, 2024) (hereinafter "Final Rule"), designed to strengthen worker protections and the integrity of the H–2 programs, provide greater flexibility for H–2A and H–2B workers, and improve program efficiency.

The Final Rule is not impermissibly vague or retroactive. First, the Final Rule is not impermissibly retroactive as it relates to the effect of a 3-year look-back period on H-2A or H-2B petitions filed *on or after* the effective date of the Final Rule. A rule which does not affect past eligibility, and which considers past data to determine *future* eligibility is not impermissibly retroactive. Second, "employment-related laws" in the discretionary denial provision is not impermissibly vague. Plaintiff had fair notice of this phrase which is used throughout the regulations and in H-2 program application forms certified by employers. Moreover, the Agency has provided objective factors to guide enforcement. Third, the provision regarding prohibited fees is not vague, as it provides a a list of factors to guide petitioners to show that they have made an "ongoing, good faith, reasonable" effort. The Final Rule is thus sufficiently clear for people of ordinary intelligence to understand and comply with its requirements and, as explained below, is neither arbitrary nor capricious. However, should the Court find provisions of the Final Rule to be arbitrary and capricious, such provisions should be severed under well-established law.

## STATUTORY BACKGROUND

Under INA § 103(a), DHS has general authority to administer and enforce the immigration laws and to issue regulations necessary to carry out that authority. The Homeland

Security Act of 2002 ("HSA") § 402, Pub. L. 107-296, 116 Stat. 2135, 6 U.S.C. § 202, charges the Secretary with "[e]stablishing and administering rules . . . governing the granting of visas or other forms of permission . . . to enter the United States" and "[e]stablishing national immigration enforcement policies and priorities." *See also* HSA § 428(b), 6 U.S.C. § 236(b). The HSA also provides that one of the primary missions of DHS is to "ensure that the overall economic security of the United States is not diminished by efforts, activities, and programs aimed at securing the homeland." HSA § 101(b)(1)(F), 6 U.S.C. § 111(b)(1)(F).

Section 101(a)(15)(H)(ii)(a)-(b) of the INA, 8 U.S.C. § 1101(a)(15)(H)(ii)(a)-(b), establishes the H-2A and H-2B nonimmigrant visa classifications for aliens who are coming to the United States temporarily to perform agricultural or nonagricultural labor or services. The H-2 nonimmigrant visa program was originally established by the INA of 1952, Pub. L. No. 82-414, 66 Stat. 163, under which a visa may be issued to an alien to perform temporary labor or services if domestic workers cannot be found to do so. In 1986, Congress amended this program by way of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, which bifurcated the H-2 designation into H-2A for agricultural and H-2B for non-agricultural workers.

For both the H-2A and H-2B classifications, INA § 214(c)(1) requires that DHS consult with the "appropriate agencies of the Government" before it may approve a petition for such classifications. 8 U.S.C. § 1184(c)(1). In either classification, DHS consults with the Department of Labor, who first determines (1) if there are not sufficient U.S. workers who are qualified and who will be available to perform the temporary services or labor for which an employer desires to hire foreign workers; and (2) the employment of the H-2 worker will

3

not adversely affect the wages and working conditions of U.S. workers similarly employed. *See* 8 C.F.R. §§ 214.2(h)(5)(i) and (ii) (H-2A program); *see also* 8 C.F.R. § 214.2(h)(6)(iv) (H-2B program).

INA § 214(a)(1) provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the [Secretary of Homeland Security[2]] may by regulations prescribe." 8 U.S.C. § 1184(a)(1). And INA § 214(c)(14) provides DHS with the authority, with respect to H-2B petitions, (i) to impose, "in addition to any other remedy authorized by law," such administrative remedies (including civil monetary penalties) as the Secretary "determines to be appropriate" and (ii) to deny petitions for a period "of at least 1 but not more than 5 years," if, after notice and an opportunity for a hearing, the Secretary finds that an employer substantially failed to meet any of the conditions of the H-2B petition or engaged in willful misrepresentation of a material fact in the H-2B petition. *See* INA §§ 214(c)(14)(A)(i) and (ii); 8 U.S.C. §§ 1184(c)(14)(A)(i) and (ii); *see also* 89 Fed. Reg. at 103217 (noting that in 2009 DHS delegated INA § 214(c)(14)(A)(i) authority to DOL).

Relying on those authorities, DHS published a notice of proposed rulemaking ("NPRM") in September 2023 to better ensure the integrity of the H-2 programs and enhance protection for workers. *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, 88 Fed. Reg. 65040 (Sept. 20, 2023). After a 60-day comment period, DHS reviewed and analyzed roughly 1,900 comments and published the Final Rule on December 18, 2024. Final Rule, 89 Fed. Reg. 103202-01, 103212 (Dec. 18, 2024). The Final Rule in 2024 adopted the

---

[2] Although the statute refers to the Attorney General, this function was transferred to DHS by operation of the HSA, and all references to the Attorney General in this context are to be read as referring to the Secretary of Homeland Security. *See* 6 U.S.C. § 557.

regulatory text proposed in the NPRM, with some changes. *See* Final Rule, 89 Fed. Reg.

103202. Among other things, the Final Rule provides that:

> 1) DHS may deny a petition for either the H-2A or H-2B classification that is filed by
>
> petitioners that have been subject to a final administrative or judicial determination that
>
> the petitioner violated any applicable employment-related laws or regulations, including
>
> health and safety laws or regulations, during the pendency of the petition or within 3
>
> years prior to filing the petition; *see id.* at 103202, 103218, 103254, 103333; and
>
> 2) DHS will deny or revoke a petition for either the H-2A or H-2B classification if
>
> DHS determines that a job placement fee, fee or penalty for breach of contract, or
>
> other fee, penalty, or compensation (either direct or indirect) related to the H-2A or
>
> H-2B employment (collectively, "prohibited fees") was collected at any time from a
>
> beneficiary of an H-2A or H-2B petition or any person acting on the beneficiary's
>
> behalf by a petitioner, a petitioner's employee, agent, attorney, facilitator, recruiter, or
>
> similar employment service, or any employer (if different from the petitioner), unless
>
> the petitioner demonstrates, among other things, to USCIS through clear and
>
> convincing evidence that the petitioner made ongoing, good faith, reasonable efforts
>
> to prevent and learn of the prohibited fee(s) collection or agreement by such parties
>
> throughout the recruitment, hiring, and employment process; *see id.* at 103211, 103229,
>
> 103331.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate

when "there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56. When considering a challenge under the APA on summary judgment, the court applies the standard of review from the APA. *Texas v. EPA*, 389 F. Supp. 3d 497, 503 (S.D. Tex. 2019) (citing *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001)). Under the APA, a court will set aside and vacate agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(a), (c).

Also of note, the Fifth Circuit has made clear that despite the overturning of *Chevron*, "courts are still to conduct a similar arbitrary-and-capricious analysis in fixing the boundaries of . . . delegated authority and ensuring the agency has engaged in reasoned decision-making within those boundaries." *Rest. L. Ctr. v. United States DOL*, 120 F.4th 163, 175 (5th Cir. 2024) (quoting in part *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)). That said, "[c]areful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Loper Bright*, 603 U.S. at 412–13.

## ARGUMENT

### I.    The Congressional Review Act claim has been dismissed for lack of jurisdiction (Count I)

Per this Court's prior Order, Count I of Plaintiffs Complaint has been dismissed. *See* Dkt. 10 ("Because evaluating the plaintiffs' claim requires a determination under the CRA, the court finds that it lacks jurisdiction and grants the defendants' partial motion to dismiss."). Therefore, Defendants will not respond to Plaintiffs' arguments regarding Count I, which are

presented "for preservation purposes only," Dkt. 26 at 3, n. 7, because these claims are not before the Court.

## II.    The Final Rule is not impermissibly retroactive (Count II)

The Final Rule effectuates the authority provided by Congress. INA § 214(a)(1) specifically provides for the Secretary to prescribe regulations providing the conditions for "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the [Secretary] may by regulations prescribe." 8 U.S.C. § 1184(a)(1). Moreover, INA § 214(c)(14) confers DHS with the authority (i) to impose administrative remedies (including civil monetary penalties) as deemed appropriate and (ii) to deny petitions for a period "of at least 1 but not more than 5 years", if, after notice and an opportunity for a hearing, the Secretary finds that an employer substantially failed to meet any of the conditions of the H-2B petition or engaged in willful misrepresentation of a material fact in the H-2B petition. *See* INA §§ 214(c)(14)(A)(i) and (ii); 8 U.S.C. §§ 1184(c)(14)(A)(i) and (ii).

The Final Rule is not a retroactive rule because it does not alter the past legal consequences of past actions. *See Mobile Relay Assocs. v. F.C.C.*, 457 F.3d 1, 11 (D.C. Cir. 2006) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 219 (1988) (Scalia, J., concurring)). On the contrary, an agency order that "alters the future effect, not the past legal consequences" of an action or that "upsets expectations based on prior law" is not retroactive. *Id.* (citations omitted). Here, Plaintiffs allege that the Final Rule applies retroactively to actions employers took prior to the Final Rule, by allowing "DHS to deny H-2 petitions based on 'labor law' violations employers resolved years in advance of this Final Rule." Dkt. 26 at 1-2. However,

as acknowledged by Plaintiffs, the Final Rule applies "to H-2A or H-2B petitions that are filed *on or after* the effective date of this rule." *See* Final Rule, 89 Fed. Reg. at 103255 (emphasis added); Dkt. 26 at 12. Because the Final Rule alters a future effect, it is not retroactive.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)). For example, the Final Rule is similar to the law challenged in *Association of Accredited Cosmetology Schools v. Alexander*, which was not retroactive because that law did not "affect[] in the slightest member schools' *past* eligibility for GSL program participation." 979 F.2d 859, 860 (D.C. Cir. 1992) (emphasis added). Instead, that law permissibly required the Secretary of Education "in determining member schools' *future* eligibility, to consider their past default rates." *Id.* (emphasis added). That a law is retroactive "if it takes away or impairs vested rights acquired under existing law" was of no help to plaintiffs, since the plaintiff "[m]ember schools have no 'vested right' to future eligibility to participate in the GSL program." *Id.*

The D.C. Circuit in *Alexander* distinguished *Bowen v. Georgetown University Hospital*, which Plaintiffs rely on, on these grounds. *Id.* ("[T]he regulations were properly characterized as retroactive because, unlike the laws here at issue, they sought to undo *past* eligibility by requiring the return or forfeiture of grants already awarded.") (emphasis added); *see also Adm'rs of Tulane Educ. Fund v. Shalala*, 987 F.2d 790, 798 (D.C. Cir. 1993) (HHS regulations were not retroactive rulemaking because they "contemplate only the use of past information for *subsequent* decisionmaking") (emphasis added); *Pine Tree Med. Assocs. v. Sec'y of Health & Hum. Servs.*, 127 F.3d 118, 121 (1st Cir. 1997) (no valid retroactivity issues raised by the application of guidelines that were issued after plaintiff had filed application to HHS).

Because the Final Rule does not affect past eligibility, it is not impermissibly retroactive. *Cf. Arkema Inc. v. EPA*, 618 F.3d 1, 8 (D.C. Cir. 2010) ("[T]he Agency is certainly entitled to change its mind and institute a program that forbids baseline inter-pollutant transfers *in the future*. But once the Agency has approved [a proposal from a company] . . . it cannot, without Congress' express authorization, use its new statutory interpretation to undo these *completed* transactions.") (emphasis added).

Moreover, the Final Rule is not arbitrary or capricious. DHS conducted a notice and comment rulemaking to improve the integrity of the H-2 program and proposed various changes to the H-2 program, including the discretionary denial provisions. *See* NPRM, 88 Fed. Reg. 65040 (Sept. 20, 2023). After reviewing public comments, DHS determined that new discretionary denial provisions based on violation determinations that occurred during the pendency of the petition or the previous three years are necessary to improve and strengthen the integrity of the H-2 program. Indeed, several commenters not only supported the 3-year lookback period, but asked for a longer period that DHS decided not to incorporate. *See, e.g.*, Final Rule, 89 Fed. Reg. 103202-01, 103256. For example, a union suggested a mandatory denial with a longer five-year lookback period. *Id.* at 103255. Several advocacy groups and a research organization suggested that DHS should not limit this provision to a 3-year look-back timeframe, so that USCIS would be able to look at any violations past the three years. *Id.* DHS declined to extend the lookback period beyond three years, because "employers have an interest in knowing that, at some point, a long-ago violation, standing alone, will no longer be a basis for calling into question their ability and intent to comply with H-2 program requirements. Establishing a set timeframe is appropriate because it recognizes the employer's

interest in certainty and accounts for changes in practice, policies and personnel by an employer which may become more relevant as the underlying violation becomes more remote in time." *Id.* at 103256.

DHS determined that the 3-year timeframe is appropriate because "a 3-year timeframe captures an employer's reasonably recent activity, which is a highly relevant consideration with respect to a petitioner's current intention and ability to comply with program requirements, and is generally sufficient to ensure that approval of an H-2 petition would not be detrimental to the rights of H-2 workers or the integrity of the H-2 program." *Id.* at 103255. DHS declined suggestions to look at only the current year, because "[l]imiting review to the current year could render this provision largely ineffective, as such a short timeframe may not enable USCIS to consider the eligibility implications of a past H-2 program violation during adjudication of a subsequent petition, as intended. Thus, limiting this review could have little deterrent effect on a petitioner whose petition for a given year was already denied." *Id.* In addition, a petitioner has the right to appeal a denial under these provisions. *Id.* at 103333.

Addressing Plaintiffs' concerns regarding the effect of prior settlements, the Final Rule also allows petitioners to explain why they made the decision to settle a prior violation claim instead of challenging the violation or finding. Specifically, the Final Rules says: "because the new discretionary provisions do not mandate denial, these petitioners would have the opportunity to explain why they agreed to pay fines which USCIS would then take into consideration, along with all relevant factors including the egregiousness of the violation(s) and the severity or monetary amount of the fines paid, in determining whether the petitioner

10

has the intent and ability to comply with H-2 program requirements and obligations." *Id.* at

103255.

For the foregoing reasons, the Final Rule is neither impermissibly retroactive nor

arbitrary or capricious.

## III. The Final Rule's discretionary denial provisions are not impermissibly vague (Count III)

Plaintiffs challenge the Final Rule's discretionary denial provisions which state that

USCIS may deny any H-2 petitions for any final administrative or judicial determination that

the petitioner violated "employment-related laws or regulations, including health and safety

laws or regulations." *Id.* at 103333.

Facial invalidation "is, manifestly, strong medicine that has been employed by the Court

sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580

(1998) (quotation omitted). "[A]ssuming the enactment implicates no constitutionally

protected conduct, [a court] should uphold the challenge only if the enactment is

impermissibly vague in all of its applications." *Roark & Hardee LP v. City of Austin*, 522 F.3d

533, 548 (5th Cir. 2008) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S.

489, 495 (1982)). "Economic regulation and enactments with civil rather than criminal

penalties are subject to a less strict vagueness test." *Magee v. City of S. Padre Island*, 463 F. App'x

377, 379 n.3 (5th Cir. 2012) (citation omitted). "A civil statute is unconstitutionally vague only

if it commands compliance in terms so vague and indefinite as really to be no rule or standard

at all or if it is substantially incomprehensible." *United States v. Clinical Leasing Serv., Inc.*, 925

F.2d 120, 122 n.2 (5th Cir. 1991) (citing *A.B. Small Co. v. Am. Sugar Refining Co.*, 267 U.S. 233,

239 (1925) and *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir.1981)) (quotations omitted).

The void for vagueness doctrine "addresses at least two connected but discrete due process concerns", namely, that "regulated parties should know what is required of them so they may act accordingly," and "that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations*, Inc., 567 U.S. 239, 253 (2012). However, "perfect clarity and precise guidance" are not required. *Doe I v. Landry*, 909 F.3d 99, 116 (5th Cir. 2018) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). The Fifth Circuit has "rejected [the notion] that a law must delineate the exact actions a [person] would have to take to avoid liability." *Id.* (citing *Roark*, 522 F.3d at 552) (quotation omitted). Instead, a facially vague provision is one that is "so standardless that it invites arbitrary enforcement." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 190 (5th Cir. 2018) (citing *Johnson v. United States*, 576 U.S. 591, 595 (2015)).

### A. Plaintiffs had fair notice of the phrase **"employment-related laws"**, because it is used throughout the regulations and in H-2 program application forms certified by employers

Contrary to Plaintiffs claim that the Final Rule's phrase "employment related laws" fails to provide fair notice, the term "employment-related laws" appears multiple times in H-2 program regulations from both the Department of Labor ("DOL") and DHS. *See* 20 C.F.R. § 655.20(z) ("An employer employing H-2B workers and/or workers . . . has agreed as part of the *Application for Temporary Employment Certification* that it will abide by the following conditions with respect to its H-2B workers . . . . During the period of employment specified on the *Application for Temporary Employment Certification*, the employer must comply with all applicable Federal, State and local **employment-related laws and regulations**, including health and safety laws. . . .") (bold emphasis added; italics in original); *see also* 20 C.F.R. § 655.1305(e)(1)

("Assurances and obligations of H-2A employers: During the period of employment that is the subject of the labor certification application, the employer will: [c]omply with applicable Federal, State and local **employment-related laws and regulations**, including employment-related health and safety laws.") (bold emphasis added; italics in original). In addition, per DOL H-2A regulations, State Workforce Authorities (SWAs) "must ensure that the employer makes the following assurances . . . . The working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other *employment-related laws*." 20 C.F.R. § 653.501(c)(3)(iii) (emphasis added).

Petitioners applying to either program not only are aware of these requirements but also *certify* their knowledge and compliance with employment-related laws and regulations. For example, Petitioners applying for an H-2A temporary labor certification with DOL (which is necessary before they can file an H-2A petition) must certify their "knowledge of and compliance with applicable Federal, State, and local *employment-related laws and regulations*, including employment-related health and safety laws." Form ETA-790A, U.S. DEPARTMENT OF LABOR, at 5, § I (emphasis added).[3] They must also sign and "assure[] that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration, and other *employment-related laws*." *Id.* at 8, No. 17(C) (citing 20 C.F.R. 653.501(c)(3)(iii)) (emphasis added).

Similarly, Form ETA 9142B asks an H-2B employer to certify their "knowledge of and compliance with the following conditions of employment applicable to H-2B workers,"

---

[3] Available at https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/ETA-790A_10-31-2025.pdf.

explicitly including: "During the period of employment that is the subject of this application, the employer will comply with applicable Federal, State and local *employment-related laws and regulations*, including, but not limited to, employment-related health and safety laws, 20 CFR 655, Subpart A, 29 CFR 503, and all applicable provisions of the Fair Labor Standards Act, 29 U.S.C. 201 et seq. . . ." Form ETA 9142B – Appendix B: H-2B Application for Temporary Employment Certification, U.S. DEPARTMENT OF LABOR, No. B(7) (emphasis added).[4]

There is thus a longstanding requirement that Plaintiff members certify their compliance with "applicable Federal, State and local employment-related laws" on H-2 petitions. Plaintiffs therefore cannot argue lack of "notice" of requirements that are included in relevant regulations and explicitly named in the forms which were signed and certified by applicant employers. The H-2 regulations and related forms provide sufficient prior understanding of the term "employment-related laws" such that, when read reasonably, the Final Rule discretionary denial provisions are sufficiently clear for people of ordinary intelligence to understand its requirements and comply.

## B. The Final Rule provides objective guidance preventing arbitrary enforcement

A facially vague provision is one that is "so standardless that it invites arbitrary enforcement." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 190 (5th Cir. 2018) (citing *Johnson v. United States*, 576 U.S. 591, 595 (2015)). Here, the Agency first listed, in 8 CFR 214.2(h)(10)(iv)(B), the violations that may lead the Agency to determine whether a petitioner has the intention and/or ability to comply with the H-2 requirements. And then it enumerated

---

[4] Available at https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/Form-ETA-9142B-Appendix-B-1205-0509.pdf.

a non-exhaustive list of factors it will consider "[i]n determining whether the underlying violation(s) in paragraph (h)(10)(iv)(B) of this section calls into question the intention and/or ability of the petitioner or its successor in interest to comply with H–2A or H–2B program requirements." 8 C.F.R. § 214.2(h)(10)(iv)(C). In response to a comment requesting a list of laws that, if violated, would establish an employer is unlikely to follow employment and immigration laws, the Agency explained why it did not create an exhaustive list:

> DHS declines to create a specific list of additional legal violations or to make a violation on this list a specific ground for mandatory denial if the violation occurred within the preceding 5 years. By including a very broad scope for the types of violation determinations that may lead to discretionary denial provision at 214.2(h)(10)(iv)(B) generally and the catch-all provision at 214.2(h)(10)(iv)(B)(3) specifically, DHS recognizes that the violations underlying these determinations can vary widely in nature and severity, and believes it is appropriate to maintain a discretionary analysis that will allow consideration on a case-by-case basis.

Final Rule, 89 Fed. Reg. 103202-01, 103257 (Dec. 18, 2024).

The factors in 8 C.F.R. § 214.2(h)(10)(iv)(C) include: "(1) [t]he recency and number of violations; (2) [t]he egregiousness of the violation(s), including how many workers were affected, and whether it involved a risk to the health or safety of workers; (3) [o]verall history or pattern of prior violations; (4) [t]he severity or monetary amount of any penalties imposed; (5) [w]hether the final determination, decision, or conviction included a finding of willfulness; (6) [t]he extent to which the violator achieved a financial gain due to the violation(s), or the potential financial loss or potential financial injury to the workers; (7) [t]imely compliance with all penalties and remedies ordered under the final determination(s), decision(s), or conviction(s); and (8) [o]ther corrective actions taken by the petitioner or its successor in interest to cure its violation(s) or prevent future violations." *Id.*

The NPRM made clear that the analysis of the factors is discretionary and explained the rationale in allowing the facts of each case to dictate whether one, some, or all factors are relevant in that specific instance:

> As the denials under proposed 8 CFR 214.2(h)(10)(iii)(B)(*3*) would be discretionary, DHS is proposing that USCIS would determine whether the violations may call into question the petitioner's ability or intent to comply with H–2 program requirements by examining all relevant factors. 8 CFR 214.2(h)(10)(iii)(C) identifies several factors that could be relevant to the analysis and that USCIS may therefore consider. The listed factors are not exhaustive; additional relevant factors that are not listed in the proposed provision may be considered by USCIS in the totality, but each one, standing alone, would not be outcome determinative. Further, not all factors would be relevant in all cases, and different factors may be weighted differently depending on the circumstances of each case. Any one of the factors, such as the egregiousness and willfulness of the violation(s) under proposed 8 CFR 214.2(h)(10)(iii)(C)(*2*) and (*5*), could be given significant weight in reviewing the totality of the facts presented, even if other listed factors were absent. For example, if the petitioner willfully committed a violation that resulted in the death of several H–2 workers, those two factors alone (*i.e.,* willfulness and egregiousness of the violation leading to the death of the workers) could be sufficient to warrant a discretionary denial under proposed 8 CFR 214.2(h)(10)(iii)(B), notwithstanding the absence of other negative factors such as a prior history of violations or achievement of financial gain.

NPRM, 88 Fed. Reg. 65040-01, 65060 (Sept. 20, 2023). The NPRM itself thus provides an example of why a formulaic, inflexible analysis should not apply to every case.

DHS further provided guidance to the regulated public and the Agency's officers regarding how the agency would apply the discretionary denial provisions. The analysis will use the "preponderance of the evidence" standard of proof, under which "the evidence must demonstrate that the petitioner's claim that it is willing and able to comply with the

requirements of the H–2 program is 'more likely than not' true after taking into consideration the prior violations and any relevant factors, both negative and positive." *Id.*

The NPRM and Final Rule therefore do not, as Plaintiffs allege, invite arbitrary enforcement, because there are explicit, objective criteria and procedures for the Agency to apply. These objective factors appropriately cabin the Agency's discretion. *See Minnesota Voters All. v. Mansky*, 585 U.S. 1, 21 (2018) ("[D]iscretion must be guided by objective, workable standards."); *cf. id.* ("It is 'self-evident' that an indeterminate prohibition carries with it '[t]he opportunity for abuse, especially where [it] has received a virtually open-ended interpretation.'"). Plaintiffs' claim that the Final Rule is impermissibly vague thus fails as a matter of law.

## IV.    The Final Rule provisions regarding prohibited fees are not impermissibly vague (Count VI)

The Final Rule provides sufficient information and explanation to elucidate what "ongoing, reasonable, good faith efforts" mean as it relates to the collection of prohibited fees. As explained above, "[a] statute is impermissibly vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Rost v. United States*, No. 1:19-CV-0607-RP, 2021 WL 5190875, at *6 (W.D. Tex. Sept. 22, 2021), *aff'd*, 44 F.4th 294 (5th Cir. 2022) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Further, the Court should consider the regulation in context with the conduct for which it applies, and "[s]o long as the mandate affords a reasonable warning of the proscribe conduct in light of common understanding and practices, it will pass . . . muster." *Deering Milliken v. OSHRC*, 630 F.2d 1094, 1103 (5th Cir. 1980); *see also Vanco Constr. v. Donovan*, 723 F.2d 410, 412 (5th Cir. 1984).

17

In Count IV, Plaintiffs claim that the Final Rule's use of "ongoing, reasonable, good faith efforts" is vague as it relates to the prohibited fee collection. *See* Dkt. 26 at 18. However, the Final Rule along with its explanations to comments provide sufficient guidance to place petitioners on notice of what the Final Rule requires.

To begin, after reviewing public comments on the NPRM, DHS clarified the standard for prohibited fee collection from "due diligence" to "ongoing, good faith, reasonable efforts" to align better with the "regulatory language at 8 CFR 214.2(h)(5)(xi)(A)(1) and 8 CFR 214.2(h)(6)(i)(B)(1) which also requires the same 'ongoing, good faith, reasonable efforts.'" Final Rule, 89 Fed. Reg. at 103211. Specifically, DHS "revise[d] the proposed due diligence language regarding third parties' collection of prohibited fees to minimize negative impacts on responsible employers who make ongoing, good faith, reasonable efforts to prevent prohibited fees." *Id.* at 103215.

As to what constitutes "ongoing, reasonable, good faith," the Final Rule imposes an obligation "to not only prevent prohibited fee collection or agreement, but also an ongoing obligation to prevent and learn of such fees, given that such fees could be collected or agreed upon at various points in time during the recruitment, hiring, or employment process." *Id.* at 103229. DHS also provided non-exhaustive factors that a petitioner may use to show that it has made an "ongoing, good faith, reasonable effort[.]" *Id.* at 103232. These factors include:

> (1) whether the petitioner was providing compensation to the third party entity such that the third party would have no incentive to pass on costs to workers; (2) whether the petitioner had procedures to contact and monitor the performance of relevant parties in the recruitment chain, whether located in the United States or abroad; and (3) whether the petitioner has a mechanism to communicate directly with workers during and after the recruitment process and properly investigate any reports of prohibited fees.

*Id.* at 103232. In addition, DHS explained that upon an employer's discovery of a prohibited fee payment, the petitioner must "take immediate remedial action as soon as it becomes aware of the payment of or agreement to pay the prohibited fee." *Id.* at 103229.

In *Ryder Truck Lines*, the Fifth Circuit rejected a claim brought by an employer that a regulation requiring protective equipment was impermissibly vague so as to not put the employer on fair note that protective footwear was required. *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 234 (5th Cir. 1974). The regulation at issue required the use of protective equipment "[w]herever it is necessary by reason of hazards of process or environment . . . encountered in a manner capable of causing injury or impairment of the function of any part of the body through absorption, inhalation, or physical contact." *Id.* at 222-23. The employer argued that this vague regulation did not provide employers notice that protective footwear was required. *Id.* at 232. The Court found the employer's argument unconvincing, holding that, although the regulation was not entirely clear, there was an inherent external and objective standard. *Id.* at 233. Further, the Court found that given the history of foot injuries in this industry and the employer's own actions, the employer was well aware that the regulation required protective footwear. *See id.* at 233-234.

Similar to *Ryder*, the Final Rule was implemented against the history of the H-2 visa program. The prohibited fee provision, along with other provisions, was implemented to "mitigate against some of these harms and vulnerabilities" that migrant workers faced. Final Rule, 89 Fed. Reg. at 103220. The use of recruitment fees is pervasive in the industry, as one study found that "a majority of H-2 workers reported paying recruitment fees, even though charging recruitment fees to such workers violates current U.S. immigration and labor

19

regulations." NPRM, 88 Fed Reg. at 65050-51. In this lawsuit, Plaintiffs are "national trade associations representing thousands seasonal and agricultural employers." *See* Dkt. 26 at 9. These organizations are already aware, or willfully ignorant, of the issues faced by migrant workers being charged prohibited fees. Given the context and history of the H-2 visa program, and the general awareness of the use of prohibited fees, the standard of "ongoing, reasonable, good faith" efforts is not so vague as to be found impermissibly vague. DHS is not required to provide every scenario that would describe what an "ongoing, good faith, reasonable effort" would be to prevent the collection of prohibited fee. *See Doe I v. Landry*, 909 F.3d 99, 116 (5th Cir. 2018) (Fifth Circuit has "rejected [the notion] that a law must delineate the exact actions a [person] would have to take to avoid liability") (citing *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008)) (quotation omitted). The regulatory text of the Final Rule and the explanations and responses in the proposed and Final Rule are sufficiently clear for people of ordinary intelligence to understand its requirements and comply.

Lastly, Plaintiffs' declarations should not be considered. *See* Dkt. 26 at 24. This is an APA record review case, and supplementation of the administrative record is inappropriate. *See Onpath Fed. Credit Union v. United States Dep't of Treasury*, 73 F.4th 291, 299 (5th Cir. 2023) ("Supplementation of the administrative record is not allowed unless the moving party demonstrates unusual circumstances justifying a departure from the general presumption that review is limited to the records complied by the agency") (internal citations omitted). Further, Plaintiffs agreed that "discovery in this matter is not required because it is an action for review on an administrative record." *See* Dkt. 15 at 3. Regardless, even if considered, DHS provided an explanation for Plaintiff's proposed scenario of a foreign agent requiring a migrant worker

pay a fee to attend a recruitment fair conducted with support from a United States government agency. DHS explained that "the fact that a petitioner used a recruitment system developed in partnership with the U.S. government will not by itself excuse an employer's failure to engage in the requisite reasonable and ongoing efforts to ensure against the payment of such prohibited fees." Final Rule, 89 Fed. Reg. 103233. However, "[i]n all cases, DHS will make its determination with respect to the question of prohibited fees based on all of the facts presented." *Id.*

Taken all together, the Final Rule provides sufficient guidance to prevent arbitrary or discriminatory enforcement by outlining objective criteria and procedures for applying the provisions of the Final Rule. The Final Rule is not arbitrary and capricious or impermissibly vague.

## V.    To the extent Plaintiffs are entitled to relief, severability of such sections is appropriate

If the Court finds sections of the Final Rule arbitrary and capricious, the Court should sever the portions of the Final Rule found to be arbitrary and capricious instead of vacating the Final Rule.

In determining severability, the Fifth Circuit looks to the intent of the agency, *"and* upon whether the remainder of the regulation could function sensibly without the stricken provision[s]." *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (italics in original) (citing *MD/DC/DE Broads. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001). If, as here, a severability clause exists, courts "should adhere to the text of [a] severability clause in the absence of extraordinary circumstances." *Nat'l Ass'n of Manufacturers v. United States Sec. & Exch. Comm'n*, 105 F.4th 802, 815 (5th Cir. 2024) (finding that certain provisions of a rule promulgated by

21

the Securities and Exchange Commission could be severed) (citing *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020)) (quotation omitted).

Here, the Final Rule contains a severability clause, indicating the intent of DHS to permit each provision to stand alone if necessary. Final Rule, 89 Fed. Reg. at 103212, 103285 ("DHS intends for the provisions of this rule to be severable from each other such that if a court were to hold that any provision is invalid or unenforceable as to a particular person or circumstance, the rule will remain in effect as to any other person or circumstance."); *see Nat'l Ass'n of Mfrs.*, 105 F.4th at 816 (explaining that a severability clause in the SEC final rule "dispels any doubt about what the SEC would have done"). Second, various provisions of this Final Rule can continue to be implemented regardless of the challenges to the Final Rule. For example, the Final Rule allows for worker flexibilities and improving H-2 efficiencies, such as greater flexibility with grace period provisions and permanent portability where an H-2 worker can begin new employment upon the proper filing of an extension of stay petition rather than only upon its approval, or the elimination of the requirement that USCIS may generally only approve H-2 petitions for nationals of certain countries designated as eligible to participate in the H-2 program. *See* Final Rule, 89 Fed. Reg. at 103204.

Accordingly, if the Court concludes that a portion of the rule is impermissible, it should vacate only the portion of the Final Rule that is arbitrary and capricious, not the Final Rule in its entirety.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

Dated: September 19, 2025

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Natasha Alexander
Assistant United States Attorney
Southern District No. 3770021
Texas Bar No. 24125476
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
Fax: (713) 718-3300
myra.siddiqui@usdoj.gov
natasha.alexander@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that, on September 19, 2025, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
