## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

FEDERATION OF EMPLOYERS AND WORKERS OF AMERICA, et al.,

*Plaintiffs*,

v.

KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, et al.,

*Defendants*.

Case No. 3:25-cv-00014

Hon. Jeffrey V. Brown

## BRIEF OF PROPOSED AMICUS CURIAE CENTRO DE LOS DERECHOS DEL MIGRANTE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Aaron Johnson
TX Bar No. 24056961
Fair Labor Law PLLC
314 E. Highland Mall Blvd., Ste. 401
Austin, TX 78752
(512) 277-3505
ajohnson@fairlaborlaw.com

Adam R. Pulver
*Pro hac vice application pending
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Attorneys for Proposed Amicus Curiae*

September 22, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

INTERESTS OF AMICUS CURIAE ........................................................................ 3

BACKGROUND .................................................................................................. 5

    I.  The H-2 Program ..................................................................................... 5

    II.  The Challenged Rule ................................................................................ 6

ARGUMENT ...................................................................................................... 8

I.      Plaintiffs' challenge to section 214.2(h)(10)(iv)(B) lack merit. ............................... 8

    A.  The consideration of pre-Rule conduct as evidence of employers' current intent and ability is not a retroactive application of the Rule. ..................................... 9

    B.  The consideration of violations of "employment-related laws and regulations" is not impermissibly vague. ............................................................................ 12

II.    The "good faith, reasonable efforts" affirmative defense to avoid denial or revocation for prohibited fee collection is not impermissibly vague. ................... 15

III.   Any relief should be limited to invalid provisions or applications. ..................... 20

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Robinson,*
   756 F.2d 1153 (5th Cir. 1985) .......................................................................... 11

*Armstrong v. Associated International Holdings Corp.,*
   242 F. App'x 955 (5th Cir. 2007) ..................................................................... 14

*Ass'n of Accredited Cosmetology Schools v. Alexander,*
   979 F.2d 859 (D.C. Cir. 1992) ......................................................................... 11

*Ass'n of Private Sector Colleges & Universities v. Duncan,*
   110 F. Supp. 3d 176 (D.D.C. 2015) ................................................................. 11

*Board of County Commissioners of Weld County v. Environmental Protection Agency,*
   72 F.4th 284 (D.C. Cir. 2023) .......................................................................... 20

*Boniface v. U.S. Department of Homeland Security,*
   613 F.3d 282 (D.C. Cir. 2010) ................................................................... 10, 11

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ........................................................................................ 20

*Causey v. Moore Family Enterprises Inc.,*
   No. 3:12-cv-00130, 2012 WL 3061846 (M.D. La. July 26, 2012) ................. 14

*Doe I v. Landry,*
   909 F.3d 99 (5th Cir. 2018) ............................................................................. 14

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ........................................................................................ 14

*Groome Resources Ltd. v. Parish of Jefferson,*
   234 F.3d 192 (5th Cir. 2000) ........................................................................... 13

*Hiers v. Board of Regents of the University of North Texas System,*
   No. 4:20-CV-321-SDJ, 2022 WL 748502 (E.D. Tex. Mar. 11, 2022) ............ 13

*Houston Federation of Teachers, Loc. 2415 v. Houston Independent School District,*
   251 F. Supp. 3d 1168 (S.D. Tex. 2017) .......................................................... 12

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988) ................................................................21

*Kansas v. Hendricks*,
   521 U.S. 346 (1997) ........................................................ 2, 10, 11

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994) ..................................................................9

*MD/DC/DE Broadcasters Ass'n v. Federal Communications Commission*,
   236 F.3d 13 (D.C. Cir. 2001) ...................................................21

*Midwest Fence Corp. v. U.S. Department of Transportation*,
   840 F.3d 932 (7th Cir. 2016) ...................................................18

*National Ass'n of Manufacturers v. U.S. Securities and Exchange Commission*,
   105 F.4th 802 (5th Cir. 2024) .............................................20, 21

*NetChoice, LLC v. Bonta*,
   __ F.4th __, No. 25-146, 2025 WL 260007 (9th Cir. Sept. 9, 2025) ...........14

*Ohio Head Start Ass'n, Inc. v. U.S. Department of Health & Human Services*,
   873 F. Supp. 2d 335 (D.D.C. 2012) .....................................10, 13

*Reynolds v. United States*,
   292 U.S. 443 (1934) ..................................................................9

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) ...............................................12, 13

*Roy v. City of Monroe*,
   950 F.3d 245 (5th Cir. 2020) ...................................................14

*San Filippo v. Bongiovanni*,
   961 F.2d 1125 (3d Cir. 1992) ...................................................12

*Texas Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) ...................................................13

*Texas v. United States*,
   126 F.4th 392 (5th Cir. 2025) .............................................20, 21

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) ................................................................................20

*United States v. Williams*,
  553 U.S. 285 (2008) ...................................................................................14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ...................................................................................13

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ...................................................................................18

**Statutes**

8 U.S.C. §§ 1101(a)(15)(H)(ii)(a)–(b) ..................................................................5

28 U.S.C. § 3397(a) ................................................................................................19

29 U.S.C. § 260 ......................................................................................................19

34 U.S.C. § 20342(1) .............................................................................................19

Pub. L. 99-603, 100 Stat. 3359 (1986) ...................................................................5

**Historical Regulations**

8 C.F.R. § 214.2(h)(2)(xi) (2008) .........................................................................15

8 C.F.R. § 214.2(h)(2)(xi)(A)(1) (2008) ...............................................................16

8 C.F.R. § 214.2(h)(2)(xi)(A)(2) (2008) ...............................................................16

8 C.F.R. § 214.2(h)(2)(xi)(A)(3) (2008) ...............................................................16

8 C.F.R. § 214.2(h)(2)(xi)(A)(4) (2008) ...............................................................17

8 C.F.R. § 214.2(h)(6)(i)(B) (2008) ......................................................................15

8 C.F.R. § 214.2(h)(6)(i)(B)(1) (2008) .................................................................16

8 C.F.R. § 214.2(h)(6)(i)(B)(2) (2008) .................................................................16

8 C.F.R. § 214.2(h)(6)(i)(B)(3) (2008) .................................................................16

8 C.F.R. § 214.2(h)(6)(i)(B)(4) (2008) ............................................................. 17

**Current Regulations**

8 C.F.R. § 214.2(h)(2) ................................................................................. 7

8 C.F.R. § 214.2(h)(5) ............................................................................. 7, 21

8 C.F.R. § 214.2(h)(5)(vi)(A) ........................................................................ 7

8 C.F.R. § 214.2(h)(5)(viii)(B) ...................................................................... 7

8 C.F.R. § 214.2(h)(5)(xi) ....................................................................... 18, 21

8 C.F.R. § 214.2(h)(5)(xi)(A) .................................................................. 2, 7,18

8 C.F.R. § 214.2(h)(5)(xi)(C) ........................................................................ 7

8 C.F.R. § 214.2(h)(6)(i)(B) .................................................................. 2, 7, 18

8 C.F.R. § 214.2(h)(6)(i)(C) .......................................................................... 7

8 C.F.R. § 214.2(h)(6)(i)(D) .......................................................................... 7

8 C.F.R. § 214.2(h)(6)(i)(E) .......................................................................... 7

8 C.F.R. § 214.2(h)(6)(i)(F) .......................................................................... 7

8 C.F.R. § 214.2(h)(6)(vii) ........................................................................... 7

8 C.F.R. § 214.2(h)(10)(iv)(A) ...................................................................... 8

8 C.F.R. § 214.2(h)(10)(iv)(B) ................................................. 2, 8, 9, 11–14, 20–22

8 C.F.R. § 214.2(h)(10)(iv)(C) .................................................................. 8, 12

8 C.F.R. § 214.2(h)(10)(iv)(M) ...................................................................... 7

8 C.F.R. § 214.2(h)(11)(iv) ........................................................................... 7

8 C.F.R. § 214.2(h)(13)(i)(B) ........................................................................ 7

8 C.F.R. § 214.2(h)(13)(i)(C) ...............................................................................7

8 C.F.R. § 214.2(h)(16)(i) ....................................................................................7

8 C.F.R. § 214.2(h)(30).....................................................................................8, 21

8 C.F.R. § 274a.12(b)(21) .....................................................................................7

20 C.F.R. § 651.10 ..............................................................................................14

20 C.F.R. § 655.20(d) ..........................................................................................15

20 C.F.R. § 655.1305(e)(1) ..................................................................................15

**Federal Register Documents**

U.S. Citizenship and Immigration Services, Department of Homeland Security, Final
  Rule, Modernizing H-2 Program Requirements, Oversight, and Worker Protections,
    89 Fed. Reg. 103202 (Dec. 18, 2024) ...............................................1, 6, 18

U.S. Citizenship and Immigration Services, Department of Homeland Security, Notice of
  Proposed Rulemaking, Modernizing H-2 Program Requirements, Oversight, and
  Worker Protections,
    88 Fed. Reg. 65040 (Sept. 20, 2023) ......................................................6, 17

U.S. Citizenship and Immigration Services, Department of Homeland Security, Final
  Rule, Changes to Requirements Affecting H-2B Nonimmigrants and Their Employers,
    73 Fed. Reg. 78104 (Dec. 19, 2008) ...........................................................15

U.S. Citizenship and Immigration Services, Department of Homeland Security, Final
  Rule, Changes to Requirements Affecting H-2A Nonimmigrants,
    73 Fed. Reg. 76891 (Dec. 18, 2008) ...........................................................15

U.S. Department of Education, Final Priority and Requirements, Innovative
  Rehabilitation Training Program,
    90 Fed. Reg. 27241 (June 26, 2025)............................................................15

**Other Authorities**

Congressional Research Service, H-2A and H-2B Temporary Worker Visas: Policy
   and Related Issues (May 11, 2023),
   https://crsreports.congress.gov/product/pdf/R/R44849.................................................5, 6

On July 25, 2025, Plaintiffs Federation of Employers and Workers of America, the Seasonal Employer Alliance, the National Association of Landscape Professionals, the National Council of Agriculture Employers, and the Outdoor Amusement Business Association filed a motion for summary judgment and asked this Court to hold unlawful and set aside a 2024 rule issued by the Department of Homeland Security (DHS). Defendants filed their opposition to that motion, and a cross-motion for summary judgment, on September 19, 2025. Proposed amicus curiae Centro de los Derechos del Migrante submits this brief in opposition to the Plaintiffs' motion, and in support of the Defendants' cross-motion.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In December 2024, the Department of Homeland Security (DHS) issued a rule that amended a wide range of regulatory provisions relating to its administration of the H-2 temporary worker programs. U.S. Citizenship & Immigration Servs., DHS, Final Rule, Modernizing H-2 Program Requirements, Oversight, and Worker Protections, 89 Fed. Reg. 103202 (Dec. 18, 2024) (the 2024 Rule). These provisions include whistleblower protections for H-2 workers, provisions regarding visa portability for workers, and a clarification regarding how H-2 workers may seek legal permanent resident status. *See id.* at 103205–09 (chart summarizing various provisions of rule).

While Plaintiffs ask this Court to set aside the 2024 Rule in its entirety, they do not identify any flaws with these—or most other—provisions of the 2024 Rule. Rather, their motion for summary judgment focuses on two other narrow provisions. First, they level two arguments related to a provision that allows, but does not compel, DHS to deny an H-

2A or H-2B petition where the employer has "not established its intention and/or ability to comply with H-2A or H-2B program requirements." 8 C.F.R. § 214.2(h)(10)(iv)(B). Specifically, Plaintiffs challenge the aspect of that provision that allows DHS to consider adjudicated violations that arose before the Rule as impermissibly retroactive, and that allows DHS to consider a final adjudication of a violation of "any applicable employment-related laws or regulation," *id.* § 214.2(h)(10)(iv)(B)(3), on the ground that it is impermissibly vague. Second, they challenge as vague a modification to pre-existing regulations prohibiting the collection of recruitment and other fees—specifically an affirmative defense by which an employer can avoid the revocation or denial of a petition where a worker was charged a prohibited fee. *Id.* §§ 214.2(h)(5)(xi)(A)(1)–(2), 214.2(h)(6)(i)(B)(1)–(2).

The challenges that Plaintiffs raise to these two discrete portions of the 2024 Rule lack merit. As to section 214.2(h)(10)(iv)(B), the possibility that DHS *may* consider pre-Rule legal violations (or other conduct) as relevant evidence in determining whether an employer is likely to comply with the program rules in the future, and thus whether to grant a new petition, does not implicate retroactivity concerns. As the Supreme Court has recognized, laws that allow the consideration of pre-enactment conduct as evidence in making a determination about post-enactment conduct are not retroactive. *See Kansas v. Hendricks*, 521 U.S. 346 (1997). And allowing DHS to consider as evidence violations of a broad category of "employment-related laws" in assessing an employer's likelihood to comply with program rules moving forward does not raise vagueness concerns, as the plain

meaning and context of the term—including the use of those words in regulations that have applied to H-2 employers for years—make the term's meaning ascertainable.

As to the modifications to the recruitment fee prohibition, Plaintiffs attempt to convert the "good faith, reasonable efforts" *affirmative defense* that limits the consequences of clearly proscribed conduct into a free-standing obligation. To the extent that vagueness doctrine is relevant at all in this situation, where there is no question that there is fair notice as to the prohibited conduct, the defense is consistent with other good faith defenses that exist throughout the law and are regularly applied.

Even were the Court to agree with the limited arguments advanced by Plaintiffs, Plaintiffs would not be entitled to the relief they seek: vacatur and an injunction against the 2024 Rule in its entirety. Under well-established principles, where a court finds a portion of, or application of a portion of, a rule unlawful, there is a presumption in favor of severing the offensive portion or application and leaving the remainder of the rule in effect. Here, there is no basis to depart from that presumption, given the explicit severability clause and the independent operation of the non-challenged provisions of the 2024 Rule—provisions that protect H-2 workers like those served by amicus. Accordingly, if the Court rules for Plaintiffs, it should narrowly tailor any relief to the provisions or applications of provisions of the 2024 Rule it finds unlawful.

## INTERESTS OF AMICUS CURIAE

Amicus Centro de los Derechos del Migrante (CDM) is a nonprofit organization with offices in the United States and Mexico, focused on promoting migrant workers' rights under U.S. law. Since its founding in 2005, CDM has worked with thousands of H-2

workers, as well as domestic workers in corresponding employment and workers on other kinds of visas, in various capacities. CDM provides legal services to workers and, together with other partners, conducts outreach and education regarding health and community resources. CDM has experienced obstacles in conducting this work due to workers' fears of retaliation and employer intimidation. CDM has also convened the Comité de Defensa del Migrante (Migrant Defense Committee, or "Comité"), a group of current and former migrant workers in the H-2 and other programs. The Comité works to empower and organize migrant workers in the United States and in their home communities, to create a culture of informed migration, and to center migrant workers' perspectives in conversations about policies that affect them. Working in partnership with the Comité and other worker leaders, CDM conducts extensive outreach in H-2A and H-2B workers' home communities and regions of employment each year, building relationships that guide its policy priorities.

CDM submitted comments as part of the rulemaking at issue in this action based on focus groups with over 25 current and former H-2 workers and other members of H-2 sending communities with experience in temporary work programs in the United States, including members of the Comité. CDM also joined a coalition comment of worker advocates supporting the proposed rule.

The 2024 Rule ameliorates several structural flaws with the H-2 program, to the benefit of H-2 workers like those served by CDM. The 2024 Rule's "program integrity" provisions benefit H-2 workers by serving as a deterrent to unlawful conduct by H-2 employers—including the collection of prohibited fees, and by extending whistleblower protections to workers who experience and report abuse and other unlawful activity. The

2024 Rule's "portability" provisions allow H-2 workers additional time to respond to an unexpected loss of employment by seeking new H-2 employment, exploring their legal options, or organizing their departure from the United States. Without these provisions, workers are discouraged from quitting abusive jobs, or even making complaints about abusive conditions that might lead to retaliation, as they face a near immediate loss of legal status upon the termination of employment. The addition of a grace period as provided for in the 2024 Rule lessens these concerns.

## BACKGROUND

### I.    The H-2 Program

Enacted in 1952, the Immigration and Nationality Act (INA) created the H-2 nonimmigrant visa category for temporary foreign workers. *See* Cong. Rsch. Serv., *H-2A and H-2B Temporary Worker Visas: Policy and Related Issues* at 1 (May 11, 2023).[1] In 1986, as part of the Immigration Reform and Control Act (IRCA), Congress amended the INA to separate the H-2 program into two separate programs, referred to as the H-2A program for agricultural workers, and the H-2B program for non-agricultural employment. Pub. L. 99-603, 100 Stat. 3359 (1986), *codified at* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a)–(b). "While there are many differences between the H-2A and H-2B programs, the process of bringing in workers under either one entails the same basic steps. Employers who want to hire workers through either program must first apply to [the Department of Labor] for labor certification. After receiving labor certification, a prospective H-2A or H-2B employer can

---

[1] https://crsreports.congress.gov/product/pdf/R/R44849

submit an application, known as a petition, to DHS to bring in foreign workers." Cong. Res. Serv., *H-2A and H-2B Temporary Worker Visas*, at 2. After DHS approves a petition, individual foreign workers who are abroad can apply for an H-2A or H-2B nonimmigrant visa from the State Department. *Id.* Foreign workers who are already in the United States can be granted an extension of stay or a change of status/extension of stay for the purpose of H-2A or H-2B employment. *Id.* at 3.

## II.     The Challenged Rule

In September 2023, DHS issued a proposal to amend its H-2A and H-2B regulations in order "to strengthen worker protections and the integrity of the H-2 programs, provide greater flexibility for H-2A and H-2B workers, and improve program efficiency." U.S. Citizenship & Immigration Servs. (USCIS), DHS, Notice of Proposed Rulemaking, Modernizing H-2 Program Requirements, Oversight, and Worker Protections, 88 Fed. Reg. 65040, 65041 (Sept. 20, 2023) (NPRM). After a public comment period, the agency issued the final rule. *See* 89 Fed. Reg. 103202. The 2024 Rule contains dozens of operative provisions and amends pre-existing program regulations on a range of topics, which DHS divided into three categories. The provisions challenged by Plaintiffs are some (but not all) of those within the first category, "Program Integrity and Worker Protections." That category includes modifications of existing prohibitions on fees charged to H-2 workers and the consequences for violating those provisions, new mandatory and discretionary grounds for denial of petitions to deter labor law violations and H-2 program abuse, new whistleblower protections for H-2 workers, modified requirements related to compliance reviews and inspections, and clarifications as to when a lack of cooperation by an employer

could result in the denial or revocation of a petition. *Id.* at 103203–04 (referencing 8 C.F.R. §§ 214.2(h)(5)(vi)(A), (h)(5)(xi)(A), (h)(5)(xi)(C), (h)(6)(i)(B), (h)(6)(i)(C), (h)(6)(i)(D), (h)(6)(i)(F), (h)(10)(iv)(M) and (h)(20)).

DHS categorized the other regulatory changes as "Worker Flexibilities" and "Improving H-2 Program Efficiencies and Reducing Barriers to Legal Migration." The "Worker Flexibilities" provisions include the addition of "grace periods" allowing workers to remain in the United States both before and after the validity dates of approved petitions, provisions allowing an employee to begin new H-2 employment upon the filing of an extension provision without waiting for it to be approved, and other provisions relating to workers' change of immigration status. *Id.* at 103204 (referencing 8 C.F.R. §§ 214.2(h)(2)(i)(D), (h)(2)(i)(I), (h)(5)(viii)(B), (h)(6)(vii)(A), (h)(11)(iv), (h)(13)(i)(C), (h)(16)(i), and 274a.12(b)(21)). The "Program Efficiencies" category removed a limitation on which countries' nationals are eligible for H-2 work, and set a uniform standard for resetting the 3-year maximum period of stay. *Id.* (referencing 8 C.F.R. §§ 214.2 (h)(2)(ii) and (iii), (h)(5)(i)(F), (h)(5)(viii)(C), (h)(6)(i)(E), (h)(6)(vii), (h)(13)(i)(B)).

In addition to its substantive provisions, the Rule also contained a severability clause, which states:

> The Department intends that should any of the revisions effective on January 17, 2025, to provisions in paragraphs (h)(2), (5), (6), (10), (11), (13), (16) and (20) of this section or to the provision in 8 CFR 274a.12(b)(21) be held to be invalid or unenforceable by their terms or as applied to any person or circumstance they should nevertheless be construed so as to continue to give the maximum effect to the provision(s) permitted by law, unless any such provision is held to be wholly invalid and unenforceable, in which event the provision(s) should be severed from the remainder of the provisions and the

holding should not affect the other provisions or the application of those other provisions to persons not similarly situated or to dissimilar circumstances.

8 C.F.R. § 214.2(h)(30).

## ARGUMENT

### I.    Plaintiffs' challenges to section 214.2(h)(10)(iv)(B) lack merit.

The 2024 Rule institutes new mandatory and discretionary grounds for DHS to deny an employer's petition for H-2 labor. First, if a petitioner has been debarred from the program on or after January 17, 2025, or adjudicated to have unlawfully employed unauthorized aliens or committed fraud with respect to a previously filed H-2A application on or after January 17, 2025, DHS is required to deny the petition. *See* 8 C.F.R. § 214.2(h)(10)(iv)(A). Second, DHS "*may* deny [a] petition if it determines that the petitioner or successor has not established its intention and/or ability to comply with H-2A or H-2B program requirements." *Id.* § 214.2(h)(10)(iv)(B) (emphasis added). The 2024 Rule identifies several adjudicated violations "that may call[] into question a petitioner's or successor's intention and/or ability to comply," including violations of specific immigration and employment laws, *see* §§ 214.2(h)(10)(iv)(B)(1) & (2), as well as:

Any final administrative or judicial determination (other than one described in paragraph (h)(10)(iv)(A) of this section) that the petitioner violated any applicable employment-related laws or regulations, including health and safety laws or regulations.

*Id.* § 214.2(h)(10)(iv)(B)(3). The Rule then sets forth eight factors that DHS must consider in determining whether any of the violations listed actually *do* demonstrate the petitioner lacks an intention and/or ability to comply. *Id.* § 214.2(h)(10)(iv)(C).

In their summary judgment brief, Plaintiffs address two aspects of section 214.2(h)(10)(iv)(B): (1) the consideration of pre-Rule conduct in making section 214.2(h)(10)(iv)(B) assessments of the intention and ability to comply and (2) the consideration of violations of "any applicable employment-related laws or regulations" under section 214.2(h)(10)(iv)(B)(3).

### A. The consideration of pre-Rule conduct as evidence of employers' current intent and ability is not a retroactive application of the Rule.

Plaintiffs first argue that section 214.2(h)(10)(iv)(B)(3) is "unlawfully retroactive." Pls. Mot., ECF 26, at 11. But this argument rests on a mischaracterization of what that provision actually does. The provision does not authorize DHS to deny a petition based on pre-Rule conduct, but instead allows DHS to consider pre-Rule conduct as relevant evidence in determining whether an employer is likely to comply with rules moving forward. Under Supreme Court precedent, such a consideration of pre-enactment conduct in making assessments of post-enactment conduct does not constitute a retroactive application.[2]

A rule is not considered retroactive "merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment." *Reynolds v. United States,* 292 U.S. 443, 449 (1934). Rather, a retroactive rule is one that "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). Recognizing this

---

[2] Amicus also agrees with the United States that the provision of the Rule is not arbitrary or capricious. *See* ECF 31, at 14–16.

distinction, the Supreme Court and other courts have drawn a line between the imposition of legal consequences for pre-enactment conduct, and the consideration of pre-enactment conduct for evidentiary purposes in assessing post-enactment conduct.

In *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997), the Supreme Court considered, among other things, whether a civil commitment statute violated the *Ex Post Facto* clause because it allowed a court to consider pre-enactment behavior in determining whether, post-Act, an individual was likely to pose a future danger to the public. The Court held that the statute "clearly does not have retroactive effect." *Id.* at 371. It explained: "To the extent that past behavior is taken into account, it is used, as noted above, solely for evidentiary purposes." *Id.* Any legal consequences were attached to the individual's *current* status as dangerous, not the acts that he committed in the past.

Courts have embraced this distinction to "routinely h[o]ld that regulations that use past data to determine future eligibility or future rates are not retroactive." *Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 873 F. Supp. 2d 335, 346 (D.D.C. 2012), *aff'd*, 510 F. App'x 1 (D.C. Cir. 2013) (collecting cases and holding that rule that denied automatic renewal of grants based on pre-enactment "deficiencies" was not retroactive). For example, in *Boniface v. U.S. Department of Homeland Security*, 613 F.3d 282 (D.C. Cir. 2010), the D.C. Circuit rejected an argument that the Transportation Security Administration's threat assessment rule was retroactive despite its consideration of pre-rule conduct. There, the agency had promulgated a rule identifying certain "disqualifying criminal offenses" that presumptively barred the issuance of a hazardous materials endorsement for a commercial drivers' license on the grounds that they showed evidence

10

of a security threat. 613 F.3d at 284–85. A driver who was denied an endorsement under this rule based on a pre-rule criminal conviction challenged the rule as retroactive. In rejecting his argument, the court found that relying on pre-rule conduct for a mere "evidentiary presumption" of "a security threat in the present" did not give the rule retroactive effect. *Id.* at 288. The court also emphasized that the rule did not on its own "bar an applicant with a disqualifying conviction from obtaining an" endorsement; it merely created a rebuttable presumption. *Id.*; *see also Alexander v. Robinson*, 756 F.2d 1153, 1155 (5th Cir. 1985) (holding that regulation that off-set current benefits based on debts incurred pre-rule was not retroactive); *Ass'n of Accredited Cosmetology Schools v. Alexander*, 979 F.2d 859, 865 (D.C. Cir. 1992) (holding that law that required Department of Education "to look at schools' past default rates in determining [their] future eligibility" to participate in student loan program was not retroactive); *Ass'n of Priv. Sector Colleges & Universities v. Duncan*, 110 F. Supp. 3d 176, 196 (D.D.C. 2015), *aff'd*, 640 F. App'x 5 (D.C. Cir. 2016) (rejecting retroactivity challenge to a rule that "affects only *future* eligibility for [student] aid, even though that determination "at least initially will depend on past facts").

Like the statute in *Hendricks* and the rule in *Boniface*, section 214.2(h)(10)(iv)(B) only authorizes the consideration of pre-Rule conduct for evidentiary purposes in making a determination as to how a party is likely to behave post-rule. It does not disqualify, or even allow DHS to disqualify, an employer because of what they have done in the past— rather, there must be a finding as to the employer's intention and/or ability to comply with H-2A or H-2B program requirements *moving forward*. Notably, unlike in *Boniface*, the rule

does not even create a presumption of ineligibility. Rather, in determining if a prior violation "calls into question the intention and/or ability of the petitioner … to comply" with program rules moving forward, DHS must consider that violation in the context of its recency, the number of violations, the egregiousness of the violation, corrective actions taken, and other factors. 8 C.F.R. § 214.2(h)(10)(iv)(C). Allowing the consideration of pre-Rule conduct as relevant evidence in making that determination as to future conduct thus does not make the Rule retroactive.

### B. The consideration of violations of "employment-related laws" is not impermissibly vague.

Plaintiffs also challenge the reference to "employment-related laws" in section 214.2(h)(10)(iv)(B)(3) as too vague to put them on notice as to the types of violations that could cause them to have an H-2 petition denied. Pls. Mot., ECF 26, at 15. Plaintiffs' argument fails.

To begin, Plaintiffs cite *Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008), for the standard used to evaluate vagueness in the context of criminal statutes: "(1) whether the law gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly; and (2) whether the law provides explicit standards for those applying them to avoid arbitrary and discriminatory applications." *Id.* at 551 (cleaned up). "[L]esser degrees of specificity are required to overcome a vagueness challenge in the civil context than in the criminal context," though, "because the consequences in the criminal context are more severe." *Houston Fed'n of Tchrs., Loc. 2415 v. Houston Indep. Sch. Dist.*, 251 F. Supp. 3d 1168, 1182 (S.D. Tex. 2017)

(quoting *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992)). "In the civil context, the [law] must be so vague and indefinite as really to be no rule at all" before it will be deemed impermissible. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 409 (5th Cir. 2020) (quoting *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000)).

Here, this less stringent vagueness test applies because, to the extent section 214.2(h)(10)(iv)(B)(3) "regulates" activity at all, that activity is purely economic (participation in the H-2 program), and the DHS's identification of a prior violation does not carry criminal or civil penalties. *See Roark & Hardee*, 522 F.3d at 551–52 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982)). The provision does not itself make any conduct unlawful. Any unlawfulness has been finally adjudicated irrespective of the 2024 Rule. Rather, the 2024 Rule simply identifies a category of evidence that may be considered in determining whether there is an inability or unwillingness to comply with H-2 program requirements in the future. Plaintiffs maintain their due process protections because they may argue that any violation of "employment-related law" should not bar their participation in the program and they have the right to appeal any adverse decision. *Cf. Ohio Head Start Ass'n*, 873 F. Supp. 2d at 340, 349–50 (rejecting due process challenge to regulation that denied automatic grant renewal based on, among other things "failure to meet any other Federal or State requirement that the agency has shown an unwillingness or inability to correct").

Given this context, the provision easily meets the low vagueness bar. In determining whether the words of a law are impermissibly vague, courts give those words "their

ordinary meaning and read [them] in context." *Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys.*, No. 4:20-CV-321-SDJ, 2022 WL 748502, at *20 (E.D. Tex. Mar. 11, 2022). *See also NetChoice, LLC v. Bonta*, __ F.4th __, No. 25-146, 2025 WL 260007, at *14 (9th Cir. Sept. 9, 2025) ("[C]ontext … can render an otherwise vague term determinate." (citing *Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972), and *United States v. Williams*, 553 U.S. 285 (2008))). Here, both plain meaning and context make the reference to "employment-related laws" "understandable and hardly incomprehensible." *Id.* For one, the plain meaning of the phrase "employment-related law" is commonly understood. *See Roy v. City of Monroe*, 950 F.3d 245, 253 (5th Cir. 2020) ("Our circuit has resisted vagueness challenges when the challenged law is couched in 'commonly understood' language, *id.*, because such language tends to provide notice to the public and meaningful guidance to the authorities." (quoting *Doe I v. Landry*, 909 F.3d 99, 118 (5th Cir. 2018)). Indeed, the term "employment-related" is used by employers and their counsel (and courts) on a regular basis. *See, e.g.*, *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 957 (5th Cir. 2007) (enforcing arbitration clause that applied to "employment-related disputes"); *Causey v. Moore Fam. Enters. Inc.*, No. 3:12-CV-00130, 2012 WL 3061846, at *3 (M.D. La. July 26, 2012) (finding scope of "employment-related practices" provision of insurance policy unambiguous)). Applied to "laws," and in the context of section 214.2(h)(10)(iv)(B)(3), the term has an obvious meaning: state and federal statutes, rules, and regulations that relate to the employment relationship. *Cf.* 20 C.F.R. § 651.10 (Department of Labor rule defining "employment-related laws" as "those laws and implementing rules, regulations, and standards that relate to the employment relationship,

14

such as those enforced by the Department's [components] or by other Federal, State, or local agencies"); U.S. Dep't of Educ., Final priority and requirements, Innovative Rehabilitation Training Program, 90 Fed. Reg. 27241, 27243 (June 26, 2025) (in setting grant priorities, referring to "the Americans with Disabilities Act and other employment-related laws" without further definition). The frequent usage of the term suggests that an employer of ordinary intelligence would generally understand what it refers to.

Additionally, the context in which the term "employment-related laws" is being used—i.e., within the H-2 program—further undercuts Plaintiffs' vagueness challenge. H-2 employers have had to agree to comply with "employment-related laws" as a condition of participating in the program for years. *See* 20 C.F.R. § 655.20(d) (rule effective since 2015, requiring H-2B employers to attest that they "will comply with applicable Federal, State and local employment-related laws and regulations"); 20 C.F.R. § 655.1305(e)(1) (rule effective since 2009, requiring H-2A employers to do same).

## II. The "good faith, reasonable efforts" affirmative defense to avoid denial or revocation for prohibited fee collection is not impermissibly vague.

Since 2008, DHS regulations have barred employers from requiring workers to pay certain kinds of fees as a condition of H-2 employment. *See* USCIS, DHS, Final rule, Changes to Requirements Affecting H-2B Nonimmigrants and Their Employers, 73 Fed. Reg. 78104 (Dec. 19, 2008) (adopting 8 C.F.R. § 214.2(h)(6)(i)(B) (2008)); USCIS, DHS,

Final rule, Changes to Requirements Affecting H-2A Nonimmigrants, 73 Fed. Reg. 76891, 76913 (Dec. 18, 2008) (adopting 8 C.F.R. § 214.2(h)(2)(xi) (2008)).

Under the 2008 regulations, DHS prohibited the collection of these fees and specified the consequences should it determine such fees were nonetheless collected—distinguishing four different scenarios. In all of the scenarios, once DHS determined there has been an unlawful fee collection, denial or revocation of the petition is presumed. In three of the scenarios, though, the petitioning employer could establish an affirmative defense to avoid denial or revocation. First, if DHS determined that a petitioning employer, before the petition was filed, had itself collected or entered into an agreement to collect prohibited fees, the H-2 petition would be denied or revoked unless the petitioner showed that the fees had been reimbursed or the agreement canceled before the petition was filed. 8 C.F.R. §§ 214.2(h)(6)(i)(B)(1)–(2) (2008) (H-2B); 8 C.F.R. § 214.2(h)(2)(xi)(A)(1) (2008) (H-2A). Second, if DHS determined that, an agent, recruiter, or similar third party had collected prohibited fees or entered into an agreement to do so, and that the employer "knew or should have known" of that collection or agreement at the time of the filing of the petition, the H-2 petition would be denied or revoked unless the petitioner showed that the fees had been reimbursed or the agreement canceled before the petition was filed. 8 C.F.R. § 214.2(h)(6)(i)(B)(2) (2008) (H-2B); 8 C.F.R. § 214.2(h)(2)(xi)(A)(2) (2008) (H-2A). Third, if DHS determined that an employer collected prohibited fees *after* the petition was filed, DHS would deny or revoke the petition. 8 C.F.R. § 214.2(h)(6)(i)(B)(3) (2008) (H-2B); 8 C.F.R. § 214.2(h)(2)(xi)(A)(3) (2008) (H-2A). Finally, if DHS determined that an agent or other third-party collected or entered into an agreement to collect prohibited

fees after the petition was filed, and that the petitioning employer knew or had reason to know of that collection or agreement, the agency would deny or revoke the petition unless the petitioner showed either that the fee was reimbursed, that the agreement to pay was terminated, or that the petitioner had notified DHS within two work days of obtaining knowledge of the prohibited fee. 8 C.F.R. § 214.2(h)(6)(i)(B)(4) (2008) (H-2B); 8 C.F.R. § 214.2(h)(2)(xi)(A)(4) (2008) (H-2A).

In 2023, citing evidence that "the collection of prohibited fees remains a pervasive problem in the H-2A and H-2B programs," DHS proposed modifying these provisions "to strengthen and clarify the existing regulatory prohibitions, to close potential loopholes, and to modify the consequences for charging prohibited fees to H-2 workers." NPRM, 88 Fed. Reg. at 65052. It proposed to eliminate the provisions that allowed a petitioner to avoid a denial or revocation "based solely on a petitioner's reimbursement, pre-payment cancellation of a prohibited fee agreement, or notification to DHS." *Id.* at 65053. This change was appropriate, DHS said, because the initial collection or agreement was itself wrongdoing, and the harm to the worker was not necessarily remedied by reimbursement. *Id.* at 65054. DHS instead proposed that an employer who itself collected or entered into an agreement to collect prohibited fees would be subject to denial or revocation, and a bar on approval of subsequent petitions, absent a showing of extraordinary circumstances and immediate remedial action, and a showing of "significant efforts to prevent prohibited fees." *Id.* Where DHS established that a third party, including joint employers, collected or entered into an agreement to collect prohibited fees, DHS proposed replacing the "knew or should have known" standard with one that required an employer to show that "it did not

know and could not, through due diligence, have learned of such payment or agreement and that all affected beneficiaries have been fully reimbursed." *Id.* at 65054–55.

In response to comments, DHS modified these provisions in the Final Rule. Relevant to Plaintiff's claims, the agency altered the "significant efforts" component of the affirmative defense for employers who themselves collected prohibited fees, and eliminated the "due diligence" component for the affirmative defense applicable where third parties engaged in prohibited fee collection. Accordingly, under the Final Rule, in either circumstance, DHS will deny or revoke a petition upon a finding of prohibited fee collection unless the employer demonstrates, among other things, "ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement by such third parties throughout the recruitment, hiring, and employment process." 2024 Rule, 89 Fed. Reg. at 103211 (discussing new 8 CFR § 214.2(h)(5)(xi)(A)(1)–(2) and 8 CFR § 214.2(h)(6)(i)(B)(1)–(2)).

The only challenge Plaintiffs make to the amended prohibited fee provisions is to assert that this "ongoing, good faith, reasonable efforts" standard is "vague." Pls. Mot. 19–20. But as discussed above, a plaintiff raising a vagueness challenge outside the criminal context faces a high bar. And even in the First Amendment context, "perfect clarity and precise guidance have never been required." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Rather, "undoubtedly flexible" standards will survive a vagueness challenge. *Id*.

Here, Plaintiffs do not suggest that employers lack fair notice of what is prohibited. Rather, their objection is only to the standard that will be used to determine whether an

employer has an affirmative defense that allows it to evade consequences for the clearly prohibited conduct. But as the Seventh Circuit has explained, the vagueness doctrine "is a poor fit" for a situation like this one. *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 947 (7th Cir. 2016). In *Midwest Fence*, that Court considered a challenge to contracting regulations that specified that states must award contracts to bidders who make "good faith efforts" to meet certain goals even if they did not reach them. Challenging the regulations, a contractor argued that they were impermissibly vague because they "fail[ed] to specify what good faith efforts a contractor must make to qualify." *Id.* at 947. The court rejected that challenge, noting that there was no criminal or civil penalty levied for a lack of good faith efforts; "at worst," a contractor "who misjudges the extent of its good faith efforts will lose out on a contract, but even then" subject to procedural safeguards. *Id.* at 947–48. Similarly, here, the regulation does not subject an employer to a fine or other penalty for not engaging in good faith efforts to prevent unlawful conduct. The regulation instead provides that, after notice and an opportunity to respond, an employer risks having a petition revoked or denied if unlawful conduct occurs, and the employer did not engage in good faith efforts to prevent it.

Further, the term "good faith, reasonable efforts" is not impermissibly vague. The law is not a stranger to the notion of "good faith" and "reasonable" defenses, which appear in dozens of places in the United States Code. One particularly apt example is contained in the Fair Labor Standards Act, which allows an employer to avoid liability for liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing

19

that his act or omission was not a violation." 29 U.S.C. § 260. This provision has been applied for decades. *See also, e.g.*, 28 U.S.C. § 3397(a) (specifying that a transfer will not be voidable under the Federal Debt Collection Procedures Act "with respect to a person who took in good faith"); 34 U.S.C. § 20342(1) (providing immunity to "any individual making a good faith report to appropriate authorities of a suspected or known instance of child abuse or neglect"). The "good faith, reasonable efforts" standard required for an affirmative defense under the prohibited-fee provisions of the rule is no less ascertainable than the "good faith" and "reasonable grounds" that will allow an employer to avoid liquidated damages under the FLSA.

## III.    Any relief should be limited to invalid provisions or applications.

While Plaintiffs ask this Court to declare the entire Rule unlawful and set it aside, such relief would be inappropriate even if the Court were to agree with their merits arguments. "In no circumstance can a court award relief beyond that necessary to redress the plaintiffs' injuries." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2563 (2025) (Thomas, J., concurring); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[R]elief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). Moreover, "[r]egulations—like statutes—are presumptively severable: If parts of a regulation are invalid and other parts are not, [courts] set aside only the invalid parts unless the remaining ones cannot operate by themselves or unless the agency manifests an intent for the entire package to rise or fall together." *Bd. of Cty. Commissioners of Weld Cty. v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023). In conducting this analysis, courts "adhere to the text of a severability clause in the absence of extraordinary

circumstances." *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (quoting *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802 (5th Cir. 2024)).

Amicus believes that the challenged provisions and applications of the Rule are lawful. Should the Court disagree and find section 214.2(h)(10)(iv)(B)(3) or section 214.2(h)(5)(xi) unlawful, the Court should apply the presumption of severability and sever and vacate only the provision(s) in question. And should the Court find that the consideration of pre-Rule acts for purposes of section 214.2(h)(10)(iv)(B) would be impermissibly retroactive, the proper relief is to declare any retroactive application unlawful and enjoin it.

Both prongs of the severability inquiry support this outcome. "[T]here is no indication that the regulation would not have been passed" without the challenged provisions, or if section 214.2(h)(5) were only applied as to violations post-effective date. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988). To the contrary, the Rule contains an explicit severability provision specifying the agency's intent that, should a court find any application or provision of the Rule unlawful, the Rule should continue to apply to the greatest extent possible. 8 C.F.R. § 214.2(h)(30). This clause "dispels any doubt what the [agency] would have done" in the event any of these provisions or application of these provisions was found unlawful. *Nat'l Ass'n of Mfrs.*, 105 F.4th at 816 (applying presumption of severability and holding that severability clause in the absence of the provision deemed unlawful).

As to the second severability prong, "the remainder of the regulation could function sensibly without the stricken provisions." *Texas*, 126 F.4th at 392 (quoting *MD/DC/DE*

*Broads. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001)). The provisions of the Rule relating to whistleblower protections and to portability of H-2 visas, for example, have no interaction with the challenged provisions at all. Should the Court conclude that DHS cannot consider pre-Rule violations or employment-related law violations in determining whether an employer is likely to comply with H-2 rules moving forward, the agency could still make that determination based on the other evidence specified in 8 C.F.R. § 214.2(h)(10)(iv)(B). And should the Court find the "good faith efforts" requirement to invoke the affirmative defense to the collection of prohibited fees, reverting to the affirmative defense that applied in that scenario under the 2008 regulations would not require abandoning any of the other changes to the prohibited fee collection regulations.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' opposition, Plaintiffs' motion for summary judgment should be denied.

Dated: September 22, 2025                          Respectfully submitted,


                                                   */s/* Aaron Johnson
                                                   Aaron Johnson, attorney-in-charge
                                                   TX Bar No. 24056961
                                                   S.D. Tex. Bar No. 1580429
                                                   Fair Labor Law PLLC
                                                   314 E. Highland Mall Blvd., Ste. 401
                                                   Austin, TX 78752
                                                   Ph: (512) 277-3505
                                                   Fax: (512) 277-3254
                                                   ajohnson@fairlaborlaw.com

Adam R. Pulver
 *Pro hac vice application pending*
D.C. Bar No. 1020475
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Amicus Curiae Centro de los
Derechos del Migrante*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I electronically filed the foregoing

pleading or other paper with the Clerk of the Court using the ECF system, which sent

notification of such filing to all counsel of record.

/s/  Aaron Johnson
Aaron Johnson

23