# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

FEDERATION OF EMPLOYERS AND
WORKERS OF AMERICA, et al.,

    *Plaintiffs*,

v.

KRISTI NOEM, in her official capacity as
Secretary of the United States
Department of Homeland Security, et al.,

    *Defendants*.

**Case No. 3:25-cv-14**

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

David R. Dorey
Washington D.C. Bar No. 1015586
S.D. Tex. Bar No. 3905240
Fisher & Phillips LLP
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Phone: (202) 978-8655
Email: drdorey@fisherphillips.com

Shawn M. Packer (*pro hac vice*)
Fla. Bar No. 90485
JPH LAW FIRM
733 10th Street, NW, Suite 900
Washington, DC 20001
Email: spacker@jphlawfirm.com

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.................................... 1

BACKGROUND AND NATURE AND STAGE OF THE PROCEEDING ....... 1

ARGUMENT ............................................................................................ 2

   I.   THE FINAL RULE IS IMPERMISSIBLY RETROACTIVE................. 2

   II.   THE FINAL RULE'S VAGUE AND UNDEFINED STANDARDS
       INVITE ARBITRARY ENFORCEMENT ........................................... 11

   III.   DEFENDANTS HAVE CONFIRMED THE RULE'S ARBITRARY
       AND CAPRICIOUS CHARACTER ...................................... 15

   IV.   THE FINAL RULE IS UNSEVERABLE, BUT SHOULD BE
       VACATED IN PART IF THE COURT DISAGREES ......................... 18

CONCLUSION................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                              **Page(s)**

*Adm'r of Tulane Educ. Fund v. Shalala,*
987 F.2d 790 (D.C. Cir. 1993) ...................................................................... 6

*Ass'n of Accredited Cosmetology Schs. v. Alexander,*
979 F.2d 859 (D.C. Cir. 1992) ...................................................................... 6

*Bowen v. Georgetown Univ.,*
488 U.S. 204 (1988) ................................................................................. 2, 3

*Carranza-De Salinas v. Holder*
700 F.3d 768 (5th Cir. 2012) .................................................................... 8, 9

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ..................................................................................... 15

*Franciscan All., Inc. v. Becerra,*
47 F.4th 368 (5th Cir. 2022) ....................................................................... 18

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ..................................................................................... 11

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ..................................................................................... 16

*Lopez Ventura v. Sessions,*
907 F.3d 306 (5th Cir. 2018) ..................................................................... 7, 8

*Mobile Relay Assocs. v. FCC,*
457 F.3d 1 (D.C. Cir. 2006) .......................................................................... 6

*Motor Vehicles Mfrs. Ass'n v. State Farm,*
463 U.S. 29 (1983) ................................................................................. 10, 16

*Pine Tree Med. Assocs. v. Sec'y of HHS,*
127 F.3d 118 (1st Cir. 1997) ......................................................................... 6

*Reno v. Am. C.L. Union,*
521 U.S. 844 (1997) ..................................................................................... 19

*Roark & Hardee v. City of Austin,*
522 F.3d 533 (5th Cir. 2008) ....................................................................... 14

*Texas Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ........................................................ 14

*Texas v. United States,*
    126 F.4th 392 (5th Cir. 2025) .................................................... 19

*Vartelas v. Holder,*
    566 U.S. 257 (2012) ........................................................... 4, 5, 6

## Statutes and Regulations

5 U.S.C. § 706 ............................................................... 17

8 U.S.C. § 1103(a) ........................................................ 17

8 U.S.C. § 1184(a) ........................................................ 17

89 Fed. Reg. 103202 (Dec. 18, 2024) .......................................*passim*

## Other Authorities

Delegation of Authority to the Department of Labor under Section
214(c)(14)(A) of the Immigration and Nationality Act (Jan. 16, 2009).......... 18

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Department of Homeland Security's ("DHS") Final Rule, *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, 89 Fed. Reg. 103202 (Dec. 18, 2024) ("Final Rule"), violates the Administrative Procedure Act ("APA") at multiple turns. The Final Rule unlawfully imposes new liabilities on pre-existing, completed conduct; establishes vague and standardless criteria to deny H-2 petitions that invite arbitrary enforcement; and purports to expand DHS's authority well beyond its statutory delegation. Defendants' arguments to the contrary only confirm rather than cure these defects.

## BACKGROUND AND NATURE AND STAGE OF THE PROCEEDING

Defendants filed a Partial Motion to Dismiss only Count I of Plaintiff's Complaint on March 24, 2025, asserting that the CRA does not permit judicial review. ECF No. 10. Plaintiffs filed an Opposition on April 14, 2025, arguing that this Court has jurisdiction to review and set aside a rulemaking that is substantially similar to a rulemaking that was disapproved by Congress. ECF No. 13 at 10–11. Plaintiffs and Defendants filed a Joint Discovery/Case Management Plan on May 5, 2025, setting the briefing schedule for Summary Judgment and assigning a time for Defendants to produce the Administrative Record. ECF No. 15. On June 3, 2025, this Court

1

dismissed Count I of the Complaint. ECF No. 18. On June 16, 2025, Defendants filed an Answer to the Complaint. ECF No. 19. Plaintiff and Defendant met and conferred about the production of the Administrative Record and Defendants filed a Motion to Manually File the Administrative Record on June 26, 2025. ECF No. 20. This Court granted that motion on June 27, 2025. ECF No. 21. Defendants provided to this Court and Plaintiffs the Administrative Record on June 27, 2025. ECF No. 22. On July 25, 2025, Plaintiffs filed their Motion for Summary Judgment. ECF No. 26. Defendants filed their Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment on September 19, 2025. ECF No. 31. Plaintiffs now file their Response in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment.[1]

## ARGUMENT

## I.    THE FINAL RULE IS IMPERMISSIBLY RETROACTIVE

The APA prohibits agency rules that impose new legal consequences on past conduct absent clear Congressional authorization. *Bowen v. Georgetown Univ.*, 488 U.S. 204, 208 (1988) ("[A] statutory grant of legislative rulemaking

---

[1] Plaintiffs' opposition and reply filing complies with the requirements of LR7.4 and Galveston Division Rule 5.

authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms."). The Final Rule violates that bedrock principle by allowing DHS to deny H-2 petitions based on completed conduct that occurred years before the Final Rule's effective date and all without Congressional authorization. 89 Fed. Reg. at 103212. And DHS admitted in this Court that it may consider pre-Rule (and indeed even pre-NPRM) conduct as purported evidence of current intent or ability when evaluating an employer's fitness to participate in the H-2 programs and never argues that Congress gave it retroactive rulemaking authority (because it did not). Defs.' Cross-MSJ at 14–15, ECF No. 31.

Claiming that DHS's scrutiny and use of past conduct is merely an exercise in assessing current or future compliance cannot withstand *Bowen*. As Justice Scalia cautioned in his concurrence there, even if an agency promulgates a rule that attaches consequences only to future transactions it can still have "unreasonable secondary retroactivity" when "for example, altering future regulation in a manner that makes worthless substantial past investment incurred in reliance upon the prior rule" and may "for that reason be arbitrary or capricious and thus invalid." *Bowen,* 488 U.S. at 219–20 (Scalia, J., concurring) (cleaned up). Here, DHS's collection of information about and use of pre-Rule conduct—particularly past settlements or

3

administrative resolutions of "labor law" allegations—as grounds for denial re-penalizes employers for conduct that was already addressed in the past under then-existing law, and by being fully and finally resolved came with exceedingly strong reliance interests. By transforming historical compliance actions into present disqualifications, DHS attached new adverse legal consequences to past, completed conduct.

Defendants contend that the "Final Rule does not affect past eligibility, [so] it is not impermissibly retroactive." Defs.' Cross-MSJ at 14; *see also id*. at 7 ("The Final Rule is not a retroactive rule because it does not alter the past legal consequences of past actions."). But that argument is foreclosed both by *Bowen* and particularly by the subsequent case *Vartelas v. Holder*, 566 U.S. 257 (2012). In *Vartelas*, the Supreme Court reaffirmed that the "deeply rooted presumption" against retroactivity squarely forbids agency action that attaches a new disability in respect to past events. *Id*. at 261, 266. There, the Court invalidated the government's attempt to apply the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to a lawful permanent resident whose criminal conviction pre-dated the statute, holding that doing so would attach a new disability (denial of reentry) to past events (his pre-IIRIRA offense, plea, and conviction). *Id*. at 269–70. The Court explained that the relevant conduct triggering the disability was not the alien's post-IIRIRA travel but rather his conviction

4

before its enactment, and that applying IIRIRA in such a way would surely be impermissibly retroactive because it imposed a new burden in consequence of a past act. *Id.* ("Vartelas, we have several times stressed, engaged in no criminal activity after IIRIRA's passage. He simply took a brief trip to Greece, anticipating a return without incident as in past visits to his parents. No indefinitely continuing crime occurred; instead, Vartelas was apprehended because of a pre-IIRIRA crime he was *helpless to undo*.") (emphasis added). Critically, the Court rejected the government's analogies to cases involving the prohibition of firearm possession by convicted felons, who pose a "present danger . . . [because they are] felons who bear arms." *Id.* at 271. And it further rejected analogies to "recidivism sentencing enhancements"—which are "a stiffened penalty for the latest crime"—noting that Vartelas had no aggravated or repetitive offense and in fact "no post-IIRIRA criminal offense at all." *Id.* at 271–72. Indeed, Vartelas's travel abroad and return to the United States were "innocent acts" that were "burdened only because of his pre-IIRIRA offense." *Id.* at 272.

So too here. Present H-2 petitioning employers are now by dint of DHS's Rule burdened by pre-Rule conduct (that can result in effective debarment from the program) that they are "helpless to undo." These employers are engaged in "innocent acts" of applying for new H-2 visas that are now burdened only because of pre-Rule employment law adjudications or

settlements entered into with no knowledge that DHS would in the future use them as a sword. There is no "stiffened penalty" for a post-Rule offense because no such offense exists under the Rule's regime, which explicitly does not require one to disenfranchise employers. 89 Fed. Reg. at 103256 ("[E]mployers have an interest in knowing that, at some point, a long-ago violation, **_standing alone_**, will no longer be a basis for calling into question their ability and intent to comply with H-2 program requirements.") (emphasis added). *Vartelas* forecloses this retroactive rulemaking, "the presumption against which embodies a legal doctrine centuries older than our Republic." 566 U.S. at 266.[2]

A rule is retroactive when it attaches new legal consequences to events completed before its enactment, regardless of whether the agency creatively labels the use of past conduct as data or evidence of respecting future compliance. *Id.* at 273–74 ("Although not a necessary predicate for invoking the antiretroactivity principle, the likelihood of reliance on prior law strengthens the case for reading a newly enacted law prospectively[.]"). DHS is not employing historical information for statistical analysis—it is using

---

[2] DHS's resort to aged, out-of-circuit cases does not help. Defs.' Cross-MSJ at 7–8 (citing *Mobile Relay Assocs. v. FCC*, 457 F.3d 1 (D.C. Cir. 2006); *Ass'n of Accredited Cosmetology Schs. v. Alexander*, 979 F.2d 859 (D.C. Cir. 1992); *Adm'r of Tulane Educ. Fund v. Shalala*, 987 F.2d 790 (D.C. Cir. 1993); *Pine Tree Med. Assocs. v. Sec'y of HHS*, 127 F.3d 118 (1st Cir. 1997). Each of these predated *Varteles* and the Fifth Circuit's interpretation of the same. And they aren't binding in any event.

past, completed conduct as the single predicate to penalize employers by denying their H-2 petitions. The fact that the Final Rule invokes pre-effective-date settlements and compliance actions as alleged "evidence" of current ineligibility confirms that DHS's rulemaking "attaches a new disability [denial of an H-2 petition] to conduct completed before the regulatory change. It is purely irrelevant that [employers] might have avoided the adverse consequences of [their conduct] by seeking a better plea deal or proceeding to trial." *Lopez Ventura v. Sessions*, 907 F.3d 306, 315 (5th Cir. 2018).

Applying *Vartelas*, the Fifth Circuit has repeatedly held that agencies may not attach new legal consequences to conduct completed before a rule's effective date. In *Lopez Ventura,* the Court applied the same retroactivity principles articulated in *Vartelas* and *Bowen* to invalidate the agency's attempt to impose new legal consequences on conduct completed before a regulatory change. The Court held that applying 8 U.S.C. § 1182(a)(2)(A)(i)(II) to a lawful permanent resident who possessed a substance *not yet controlled at the time of his arrest* was "impermissibly retroactive" because "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 309, 315 (cleaned up). The Court emphasized that the "presumption against retroactive legislation . . . is deeply rooted in our jurisprudence" and that it accordingly "requires that

7

Congress legislate with a clear statement of retroactivity." *Id.* at 311. Finding "no express statement of retroactivity in either the DEA's final order, the regulation, or the statutes authorizing the promulgation of the controlled-substance schedules," the Court concluded that the addition of a new substance was not meant to operate retroactively.   *Id.* at 312.   Echoing *Vartelas*, the Court rejected the government's argument that the alien could have avoided the disability by different post-enactment choices, explaining that the new rule "attaches a new disability (inadmissibility) to conduct completed before the regulatory change," and that "the absence of actual detrimental reliance is not determinative." *Id.* at 315–16. "[W]henever the Court has articulated the test for retroactivity, it has framed that test in terms of attaching new disabilities to transactions or considerations already past, conduct over and done, or events completed before [the regulations] enactment." *Id.* at 315 (cleaned up).

And in *Carranza-De Salinas v. Holder*, 700 F.3d 768 (5th Cir. 2012), the Fifth Circuit—also applying *Vartelas*—held that the repeal of § 212(c) relief under the IIRIRA, could not be applied retroactively to an alien whose conviction pre-dated the Act.   The Court explained that   "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 772. "To determine when

8

a law may not apply retroactively, we look to whether such application would take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past." *Id*. (cleaned up). Citing *Vartelas*, the panel reiterated that "[t]he essential inquiry . . . is whether the new provision attaches new legal consequences to events completed before its enactment" *Id*. at 773 (cleaned up). The court found that "the repeal of § 212(c) relief in IIRIRA attaches new legal consequences to Carranza's conviction: before the passage of IIRIRA, she was eligible to apply for § 212(c) relief; afterwards, she was not." *Id*. at 774–75. These binding decisions confirm that retroactivity is impermissible whenever an agency "attaches a new disability" to prior conduct, regardless of whether it labels the rule as procedural, evidentiary, or discretionary.

Employers often resolve enforcement actions through settlement agreements that include admissions of liability or factual findings solely to avoid the expense and uncertainty of litigation. Those agreements were lawful under the governing regime at the time they were executed, and the actual labor law enforcement agency—typically the Department of Labor's Wage and Hour Division—determined that the violations were not so severe as to warrant debarment, thereby allowing the employer to continue participating in the H-2 programs. Yet, under the Final Rule, DHS now

9

treats such settlements as proof of an employer's lack of "intention and ability to comply" giving it unfettered discretion to deem the employer ineligible for future petitions.  89 Fed. Reg. at 103212.  Through the Final Rule, then, DHS converts resolved, historical matters with fully known consequences into ongoing, previously unknown and unknowable disabilities without even a current violation as a hook—an impermissible retroactive penalty.  *Id.* at 103256 (agreeing that a "long-ago violation, standing alone" is sufficient to bar an employer from the H-2 program).

The Final Rule compounds this defect by failing to provide any transitional or safe-harbor provisions.  The Final Rule's Regulatory Impact Analysis and APA discussion contain no mechanism to distinguish pre-Rule conduct from post-Rule violations, no grace period, and no standards whatsoever to mitigate the obvious reliance interests.  *See id.* at 103287–90.  DHS's omission of these features confirms that it failed to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (internal quotations omitted).  DHS never attempted to articulate the cost that might befall H-2 employers in the situation we describe here, those employers that have made an economic decision to enter into settlement agreements that include admissions of liability or factual findings.  Nor has DHS even attempted to consider other

options regarding the look back period, only whether it should be longer rather than shorter. DHS's attempt to minimize this problem by asserting that the new denial authority "does not mandate denial" is immaterial. Defs.' Cross-MSJ at 15. The very existence of claimed discretionary authority to penalize past conduct suffices to create an impermissible retroactive effect. Accordingly, the Final Rule violates the prohibition on retroactive rulemaking and must be vacated under 5 U.S.C. § 706(2)(A) and (C).

## II. THE FINAL RULE'S VAGUE AND UNDEFINED STANDARDS INVITE ARBITRARY ENFORCEMENT

The Final Rule also suffers from the core defect of vagueness. DHS created new denial and revocation criteria that hinge on undefined terms— particularly "employment-related laws" and "ongoing, good faith, reasonable efforts"—without providing regulated employers any objective metric to understand what compliance requires. The result is a regime that "delegates basic policy matters to [bureaucrats] for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (emphasis in original).

The Final Rule authorizes DHS to deny petitions based on violations of "any applicable employment-related laws or regulations," including "health and safety laws or regulations." 89 Fed. Reg. at 103233. DHS, however,

11

never defines "employment-related laws," provides no cross-reference to any statutory or regulatory framework that might provide a definition, and fails to identify the scope or source of those laws. Although as DHS argues the phrase "employment-related laws" appears in existing forms and regulations (Defs.' Cross-MSJ at 12–13), it has never before to our knowledge been used as a substantive standard for H-2 petition denial at DHS with potentially terminal consequences for employers. The Final Rule fails to define which specific laws qualify as "employment-related," leaving employers totally uncertain about which violations both require disclosure and could trigger denial. This lack of specificity is particularly problematic given the vast array of federal, state, and local laws that might well qualify, creating an impossibly broad standard that fails to provide meaningful notice of what conduct is prohibited or what compliance requires. In response, DHS *ipse dixit* asserts that the phrase "any applicable employment-related laws or regulations" "provides sufficient clarity and guidance to the regulated public and to USCIS adjudicators" and then goes further to muddy the waters even more by saying that "USCIS may consider providing additional guidance." 89 Fed. Reg. at 103256. That just doesn't work. Despite that guidance would not save it from having promulgated a vague rule that isn't compliant with the APA, it is worth noting DHS never says that in the near year since the

Final Rule's publication it has provided any further clarity or guidance. The waters are muddy as ever.

DHS specifically argues that the Final Rule is not impermissibly vague because the phrase "employment-related laws" appears elsewhere in immigration regulations and H-2 program forms, and that DHS provided "objective factors" for enforcement. Defs.' Cross-MSJ at 17–19. That argument fails for two reasons. ***First***, the Final Rule itself confirms that DHS rejected requests for clarification, explicitly declining to define the phrase while merely restating its use. *See* 89 Fed. Reg. at 103256–57. That is wholly unsurprising because DHS is not an enforcer of employment-related laws and has no expertise in defining what they may be. ***Second***, the Final Rule replaced the NPRM's "due diligence" language with an "ongoing, good faith, reasonable efforts" standard and that the change was "not intended to be a less stringent standard than the proposed due diligence requirement." *Id.* at 103231. By replacing one undefined term with another, DHS increased uncertainty rather than reducing it. The "ongoing, good faith, reasonable efforts" standard remains impermissibly vague despite the non-exhaustive factors provided. Employers have no way to determine what specific actions will satisfy this standard, particularly when dealing with third parties in foreign countries beyond their control. The factors listed are general and nebulous concepts rather than clear compliance requirements. The Final

Rule imposes potentially severe penalties based on a subjective assessment of employers' efforts without providing concrete, measurable standards for compliance, leaving employers unable to determine with any certainty whether their preventative measures will be deemed sufficient. These are in no way objective factors—they are subjective standards that depend entirely on adjudicator discretion, the very defect the APA forbids.

The Fifth Circuit has repeatedly invalidated civil regulations that are so "indefinite that no one could know what is prohibited, creating an ordinance that is substantially incomprehensible." *Roark & Hardee v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008) (cleaned up). Here, although it is known what is not allowed, it is not known how to comply with what is not allowed three steps away from an employer's knowledge (recruiters working in a foreign country of another entity that an employer may have contracted with) regarding prohibited fees or violation of "employment-related laws." And DHS's invocation of "employment-related laws" provides no guidance to employers seeking to comply and no limiting principle to adjudicators trying to apply the Final Rule. The phrase's breadth and ambiguity invite the very "multiple constructions" that deprive regulated entities of clarity. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 396 (5th Cir. 2020). Because DHS failed to supply intelligible principles or limit its own discretion, the Final

Rule's vagueness independently requires vacatur under 5 U.S.C. § 706(2)(A) and (D).

### III.   DEFENDANTS HAVE CONFIRMED THE RULE'S ARBITRARY AND CAPRICIOUS CHARACTER

Defendants' summary judgment motion and opposition only underscores the APA violations on which the Final Rule is built. Far from curing DHS's errors, that submission reveals DHS's unreasoned expansion of authority—into being a labor enforcement agency—and its unexplained departure from the proposed rule to not define "due diligence" but then introduce yet another undefined principal of "ongoing, good faith, reasonable efforts." The record confirms that the Final Rule cannot withstand arbitrary and capricious review under the APA. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ("As this Court has explained, a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved.").

The record contains nearly two thousand comments on the NPRM, including detailed objections from Plaintiffs and other stakeholders, raising due process, retroactivity, and definitional / vagueness concerns. 89 Fed. Reg. at 103202–03. DHS's preamble to the Final Rule admits that it made only "minimal changes" in response. *Id.* Its cursory statements did not engage with the central concerns raised by commenters—that the Rule's

standards are indeterminate, its look-back provision retroactive, and its enforcement structure duplicative of DOL authority.   Such boilerplate reasoning does not satisfy the requirement that an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43.

Defendants fail to identify any contemporaneous rationale in the record supporting DHS's new denial authorities or the expanded "employment-related laws" criterion.   Instead, they advance *post hoc* litigation arguments—precisely what *State Farm* forbids. *Id.* at 50 ("[C]ourts may not accept . . . post hoc rationalizations for agency action.   It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").   Defendants assert "broad statutory authority" under 8 U.S.C. §§ 1103(a) and 1184(a), and DHS's preamble likewise cites § 1103(a) as a general source of rulemaking power. *See* 89 Fed. Reg. at 103217.   Yet neither the Final Rule nor Defendants' brief identifies any statutory nexus between those general delegations and the new denial and revocation authorities the Rule creates—particularly because Congress never gave DHS retroactive rulemaking authority.

Moreover, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), has since abrogated *Chevron* and abolished the deference framework those

16

cases relied upon.  Reviewing courts now must interpret agency statutes *de novo* under 5 U.S.C. § 706.  Without *Chevron* deference, DHS's claimed "broad authority" under §§ 1103(a) and 1184(a) collapses under independent judicial scrutiny.

The Final Rule's internal inconsistencies further confirm that DHS acted "in excess of statutory jurisdiction [and] short of statutory right."  5 U.S.C. § 706(2)(C).  Congress vested the Secretary of Homeland Security with authority to "administer and enforce the immigration and nationality laws" and to "prescribe by regulation the conditions for the admission of nonimmigrants."  8 U.S.C. §§ 1103(a), 1184(a).  Those provisions empower DHS to regulate the admission of nonimmigrants—not to create or enforce new substantive obligations against employers or to penalize them for collateral labor law violations—violations that may not even involve H-2 workers.  Nothing in the INA grants DHS plenary authority to regulate employment practices or to duplicate the Department of Labor's enforcement functions.

Defendants further contend that the Final Rule merely aligns with DOL's standards and does not conflict with DOL's enforcement authority.  89 Fed. Reg. at 103216–17, 43; *see also* Defs.' Cross-MSJ at 18–19.  Yet DHS simultaneously disclaims its prior delegation to DOL, asserting that it disagrees that its investigative and enforcement authority conflicts with

17

DOL's or that DHS has delegated all of its enforcement authority. 89 Fed. Reg. at 103216–17. This contention directly contradicts DHS's own 2009 Memorandum of Understanding, which transferred investigative and enforcement responsibility to DOL. *See* Delegation of Authority to the Department of Labor under Section 214(c)(14)(A) of the Immigration and Nationality Act (Jan. 16, 2009) (cited at 89 Fed. Reg. 103203 n.4). By reclaiming those powers without acknowledging or explaining this reversal, DHS engaged in precisely the unreasoned policy change that *Fox Television Stations, Inc.* prohibits. Its conclusory assertion of alignment provides no reasoned basis for abandoning its longstanding division of enforcement authority.

Because DHS failed to articulate a rational connection between its findings and its regulatory choices, ignored significant comments, and justified its rule through post hoc litigation positions, the Final Rule is arbitrary and capricious and must be vacated under 5 U.S.C. § 706(2)(A) and (C).

## IV.  THE FINAL RULE IS UNSEVERABLE, BUT SHOULD BE VACATED IN PART IF THE COURT DISAGREES

"Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). "[A] severability clause is an aid merely; not an

inexorable command." *Reno v. Am. C.L. Union*, 521 U.S. 844, 885 n.49 (1997) (cleaned up). Although the Final Rule contains a severability clause, "[i]n the context of agency rulemaking, a two-prong inquiry guides our severability analysis: Whether the offending portions of a regulation are severable depends upon the intent of the agency and upon whether the remainder of the regulation could function sensibly without the stricken provisions." *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (cleaned up).

The specific provisions challenged here are central to the Final Rule's stated purpose of strengthening worker protections and program integrity. Severing these provisions would fundamentally alter the regulatory scheme and undermine the Final Rule's stated objectives. For this reason, Plaintiffs submit that the Final Rule cannot "function sensibly" without them, requiring full vacatur despite the severability clause. However, should the Court disagree and determine that the Final Rule could indeed "function sensibly" with the offending provisions stricken, Plaintiffs ask that the Court vacate only the specific provisions challenged in this action—including the retroactive enforcement provisions, the undefined "employment-related laws" and "ongoing, good faith, reasonable efforts" standards, and the duplicative denial and revocation authorities—and award Plaintiffs their costs and reasonable attorneys' fees together with such other relief as the Court deems appropriate.

## CONCLUSION

DHS's Final Rule cannot withstand judicial review. The challenged provisions violate the APA at every level—substantively, procedurally, and jurisdictionally. DHS imposed new legal consequences on conduct that predates the Rule's effective date, acted without statutory authority, and promulgated vague standards that invite arbitrary enforcement. The agency's *post hoc* rationalizations and reliance on out-of-circuit, now-abrogated deference precedents cannot substitute for reasoned decision-making under *State Farm, Bowen*, and *Vartelas*.

DHS's unexplained reversal of policy, its disregard for comments identifying these defects, and its duplicative assumption of enforcement powers Congress did not assign—and DHS itself delegated away—are precisely the kind of agency overreach the APA forbids. The Supreme Court's decision in *Loper Bright*, confirms that this Court owes DHS no deference in interpreting its statutory limits. Independent judicial review requires vacatur of the Final Rule or in the alternative its APA-offending provisions challenged here.

Respectfully submitted,

Dated: November 7, 2025

**/s/ David R. Dorey**
David R. Dorey, attorney-in-charge
Washington D.C. Bar No. 1015586
S.D. Tex. Bar No. 3905240
Fisher & Phillips LLP
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Phone: (202) 978-8655
Email: drdorey@fisherphillips.com

Shawn M. Packer (*pro hac vice*)
Fla. Bar No. 90485
JPH LAW FIRM
733 10th Street, NW, Suite 900
Washington, DC 20001
Phone: (202) 629-9310
Email: spacker@jphlawfirm.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document was filed and served on counsel of record through the Court's CM/ECF system.

Dated: November 7, 2025            **/s/ David R. Dorey**
                                   David R. Dorey, attorney-in-charge
                                   Washington D.C. Bar No. 1015586
                                   S.D. Tex. Bar No. 3905240
                                   Fisher & Phillips LLP
                                   1401 New York Avenue, NW, Suite 400
                                   Washington, DC 20005
                                   Phone: (202) 978-8655
                                   Email: drdorey@fisherphillips.com

                                   *Counsel for Plaintiffs*