# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| FEDERATION OF EMPLOYERS AND WORKERS OF AMERICA, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL NO. 3:25-cv-14 |
| KRISTI NOEM[1] IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY, *et al.*, | § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT AND SUR-REPLY TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants Kristi Noem, Secretary of Homeland Security, *et. al.*, file this reply in support of their Cross-Motion for Summary Judgment ("Motion"), Dkt. 31, and in opposition to Plaintiffs' Response in Support of Motion for Summary Judgment, Dkt. 41. ("Pls.' Resp."). The Department of Homeland Security's ("DHS") Final Rule, *Modernizing H-2 Program Requirements, Oversight, and Worker Protections*, 89 Fed. Reg. 103202 (Dec. 18, 2024) was designed to strengthen worker protections and the integrity of the H–2 visa program, provide greater flexibility for H–2A and H–2B workers, and improve program efficiency. The Final Rule is not impermissibly retroactive, arbitrary and capricious, or vague, and should be upheld.

---

[1] Federal Rule of Civil Procedure 25(d) allows for the substitution of the successor Secretary of Homeland Security and Director of U.S. Citizenship and Immigration Services (USCIS).

**1.     The Final Rule is not impermissibly retroactive (Count II)**

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)). Contrary to the arguments made by Plaintiffs, *Vartelas* does not make the sweeping conclusion that merely attaching legal consequences to past conduct is never allowed. *Vartelas* confirmed well-established precedent that a law is impermissibly retroactive "when such application would take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (quotation and citation omitted). Plaintiffs have not pointed to any authority that supports their unfounded contention that the Final Rule takes away vested rights or attaches a new disability, i.e. that an employer's eligibility or lack thereof to hire migrant workers through the H-2 visa program is a vested right or a new disability.

Instead of addressing the question before the Court, *Vartelas* answered the discrete question of whether a statute created a "new disability" by imposing admissions requirements on lawful permanent residents who previously could return from brief trips abroad without applying for admission to the United States. *Id.* at 263. Under the challenged statute, lawful permanent residents were now "subject to admission procedures, and, potentially, to removal from the United States on grounds of inadmissibility." *Id.* To conclude that these new admission requirements and potential removal from the United States constitute a new disability, the Supreme Court relied on prior Supreme Court precedent regarding the severity of this sanction, as permanent residents were "[o]nce able to journey abroad to fulfill religious

2

obligations, attend funerals and weddings of family members, tend to vital financial interests, or respond to family emergencies." *Id.* at 267–68 (citing *Padilla v. Kentucky*, 559 U.S. 356, 365–66 (2010)). *Vartelas* had nothing to do with an applicant's eligibility to participate in a program, like the H-2 visa program, in the future, and there is no basis to conclude that an employer's potential ineligibility to participate in the migrant worker program is a new disability at all similar to an individual's (already existing) statutory right to reenter the country.

Unlike the Plaintiffs in this case, the *Vartelas* permanent residents' right to reentry was a vested right by statute; no application for this right to reentry was needed. Here, Plaintiffs do not have a vested right to participate in the H-2A or H-2B program, which is why they must petition USCIS on behalf of intending nonimmigrants and establish eligibility. And the filing of a nonimmigrant petition does not create a vested right. *See Cox v. Kijakazi*, 77 F.4th 983, 991 (D.C. Cir. 2023) ("Cox's filing of her application for SSI benefits itself did not vest her with any legal right to have her claim decided under the 2014 Listings, as opposed to the 2017 Listings. . . . Cox also does not point to any source of law vesting her with the right to have her disability assessed under one set of regulations rather than another."); *see also Chadmoore Commc'ns, Inc. v. FCC*, 113 F.3d 235, 241 (D.C. Cir. 1997) (no rights vested upon filing for application for extension for implementing license).

Plaintiffs' other cases similarly find a "new disability" for an individual's inadmissibility to the United States (*Lopez Ventura*) or an individual's eligibility to apply for discretionary relief from removal(*Carranza-De Salinas*). *See Lopez Ventura v. Sessions*, 907 F.3d 306, 315 (5th Cir. 2018); *Carranza-De Salinas v. Holder*, 700 F.3d 768, 774 (5th Cir. 2012). Neither of these cases involving an individual's admissibility or removability go to the inquiry of whether a company

has a "vested right" to employ migrant workers under a particular set of regulations or whether changes to eligibility creates a "new disability." More relevant cases are those examining future eligibility for various programs as cited in Defendant's brief. ECF No. 31 at 8–9; *See, e.g.*, *Ass'n of Accredited Cosmetology Schools v. Alexander*, 979 F.2d 859, 860 (D.C. Cir. 1992) (schools had no vested right to future eligibility for participation in Guaranteed Student Loan program); *Adm'rs of Tulane Educ. Fund v. Shalala*, 987 F.2d 790, 798 (D.C. Cir. 1993) (HHS regulations regarding calculation of reimbursement to teaching hospitals not retroactive rulemaking because regulations "contemplate only the use of past information for subsequent decisionmaking"); *Pine Tree Med. Assocs. v. Sec'y of Health & Hum. Servs.*, 127 F.3d 118, 121 (1st Cir. 1997) (HHS could apply guidelines with updated criteria for designation as medically underserved population, even though healthcare provider's application was submitted before issuance of updated guidelines.). Because Plaintiffs did not have a vested right in potential eligibility for the H-2A or H-2B program the Final Rule is not impermissibly retroactive.

Lastly, Plaintiffs' throwaway argument regarding secondary retroactivity does not save their case, as they do not provide any examples of purported "reliance interests" or show that the Final Rule is not reasonable. The Final Rule should be upheld because it is reasonable and is not arbitrary and capricious, as explained in Defendant's brief. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 220 (1988) (rule with secondary retroactivity may be sustained "in spite of such retroactivity if it is reasonable") (Scalia, J., concurring); ECF No. 31 at 9-17.

### 2. The Final Rule is not impermissibly vague and includes guidance preventing arbitrary enforcement (Counts III and IV)

A regulation is vague if it does not "provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously

4

discriminatory enforcement." *Rost v. United States*, No. 1:19-CV-0607-RP, 2021 WL 5190875, at *6 (W.D. Tex. Sept. 22, 2021), *aff'd*, 44 F.4th 294 (5th Cir. 2022) (*quoting United States v. Williams*, 553 U.S. 285, 304 (2008)); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (applying vagueness standard to regulation).

### a. "Employment-related laws" (Count II)

The phrase "employment-related laws" does not simply "appear in existing forms and regulations." *See* Pls.' Resp., Dkt. 41 at 12. Petitioners applying to the H-2A or H-2B program are aware of these requirements because in their application forms, they *certify* their knowledge and compliance with employment-related laws and regulations. *See* ECF No. 31 at 12-14; (citing Forms ETA-790A and ETA 9142B). It is unclear how applicant employers can have "no way of determining" what requirements are at play after signing and certifying their knowledge and compliance. In light of the regulations and the application process, the Final Rule's discretionary denial provisions are sufficiently clear for people of ordinary intelligence to understand its requirements and comply.

In addition, Plaintiffs completely gloss over the eight detailed factors to be considered "[i]n determining whether the underlying violation(s) in paragraph (h)(10)(iv)(B) of this section calls into question the intention and/or ability of the petitioner or its successor in interest to comply with H–2A or H–2B program requirements." 8 C.F.R. § 214.2(h)(10)(iv)(C). Plaintiffs call these factors "nebulous concepts," despite the fact that the factors include objective, and often quantitative, metrics such as how many workers were affected, the severity or monetary amount of any penalties imposed, whether the final determination included a finding of willfulness, the extent to which the violator achieved a financial gain due to the violation(s),

or the potential financial loss or potential financial injury to the workers. *Id.* The reasoning behind the list, including its non-exhaustive nature, is also explained by the Final Rule. Dkt. 31 at 15-16. The Final Rule is therefore not arbitrary and capricious, is not impermissibly vague, and does not invite arbitrary enforcement.

### b. "Good faith, reasonable efforts" (Count IV)

In Count IV, Plaintiffs claim that the Final Rule's use of "ongoing, reasonable, good faith efforts" is vague as it relates to the prohibited fee collection. *See* Dkt. 26 at 18. However, the Final Rule along with its responses to comments provide sufficient guidance to place petitioners on notice of what the Final Rule requires. Although the Final Rule provides guidance and factors for its analysis of good faith efforts, Plaintiffs simply state the standard is vague without explaining why the factors do not provide any aid.

While Plaintiffs argue the meaning of "good faith, reasonable efforts" is vague, the prohibited conduct is clear: prohibited fees cannot be collected from H-2 visa applicants. Their argument that the standard is impermissibly vague is misplaced. To begin, it is important to frame Plaintiffs' challenge. Plaintiffs do not challenge the restriction on prohibited fees for the H-2 visa program. And nor can they, as the collection of these fees has long been prohibited. Rather, Plaintiffs challenge the "good faith, reasonable effort" standard because "[e]mployer[s] have no way to determine what specific actions will satisfy this standard, particularly when dealing with third parties in foreign countries beyond their control." Pls.' Resp., Dkt. 41 at 17.

However, the "good faith, reasonable effort" standard only comes into play after an employer violates the well-established prohibited fee requirement. In other words, the Final Rule provides that a revocation or denial of a visa may be avoided *despite a collection of a prohibited*

6

*fee*, if the H-2 employer demonstrates that they have conducted "ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement." 89 Fed. Reg. 103211(emphasis added).[2] There is no doubt that prohibited fees cannot be requested from H-2 visa applicants. Moreover, this language does not encourage discriminatory enforcement, as this standard does not come into play until after a violation of the prohibited fee provision and provides an avenue for employers to escape liability of a violation of well-established law.

Further, this is not a new requirement. Even prior to the Final Rule, employers were responsible for ensuring that prohibited fees were not collected from H-2 visa recipients *See Changes to Requirements Affecting H-2A Nonimmigrants*, 73 Fed. Reg. 76891-01, 76894 (2008) (explaining that employers can avoid a denial or revocation of a H-2 petition "where USCIS determines that the petitioner knows or reasonably should know that the worker has agreed to pay the prohibited fees as a condition of obtaining H-2A employment") (available in administrative record at DEF_000452).

## CONCLUSION

For the foregoing reasons and those argued in Defendants' Cross-Motion for Summary Judgment (Dkt. 31), Defendants respectfully request that this Court deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

---

[2] The Government agrees with the analysis put forth in the amicus brief, Dkt. 40, with regards to *Midwest Fence Corp. v. U.S. Dep't of Transp.,* 840 F.3d 932, 947 (7th Cir. 2016). The Seventh Circuit rejected a vagueness challenge to regulations involving "good faith efforts" because it did not punish certain contractors but rather at worst would result in a contractor losing out "on a contract, … after an opportunity for administrative reconsideration." *Id.* at 947-48. Similarly, the good faith reasonable effort in the Final Rule does not place an affirmative obligation on the H-2 employer but rather can be invoked after a violation has occurred.

Dated: December 5, 2025

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Natasha Alexander
Assistant United States Attorney
Southern District No. 3770021
Texas Bar No. 24125476
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
Fax: (713) 718-3300
Email: myra.siddiqui@usdoj.gov
E-mail: natasha.alexander@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that, on December 5, 2025, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*/s/ Natasha Alexander*
Natasha Alexander
Assistant United States Attorney