United States District Court
Southern District of Texas
ENTERED
October 30, 2026
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:25-cv-14

FEDERATION OF EMPLOYERS AND WORKERS OF AMERICA, *ET AL.*,
*PLAINTIFFS*,

v.

MARKWAYNE MULLIN, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are the parties' cross-motions for summary judgment. Dkts. 26, 31. Centro de los Derechos del Migrante, a nonprofit organization based in the United States and Mexico, has filed a brief of amicus curiae in support of the defendants' cross-motion for summary judgment. Dkt. 40. The court grants summary judgment in favor of the defendants.

## I. Background

The H-2 non-immigrant visa program allows the Department of Homeland Security ("DHS") to issue visas to nonresidents for temporary labor in cases where domestic workers cannot be found. 8 C.F.R.

§ 214.2(h)(5)–(6); 8 U.S.C. § 1101(a)(15)(H)(ii)(a)–(b). The program divides guestworkers into two categories: (1) agricultural workers who receive H-2A visas and (2) nonagricultural workers who receive H-2B visas. 8 U.S.C. § 1101(a)(15)(H)(ii)(a)–(b). Employers who want to hire workers through the H-2 program can submit a petition to DHS, requesting authorization to bring in foreign workers. *See* Cong. Rsch. Serv., *H-2A and H-2B Temporary Worker Visas: Policy and Related Issues*, https://www.congress.gov/crs-product/R44849. If the petition is approved, then a prospective foreign worker may apply for an H-2 visa from the Department of State and seek admission into the United States at a port of entry. *Id.*

On December 18, 2024, DHS issued a final rule titled *Modernizing H-2 Program Requirements, Oversight and Worker Protections*. 89 Fed. Reg. 103202 (Dec. 18, 2024). DHS adopted the rule "to strengthen worker protections and the integrity of the H-2 programs, provide greater flexibility for H-2A and H-2B workers, and improve program efficiency." *Id.* at 103203. Among other things, the final rule provides that DHS may deny a petition for H-2 classification if it determines that, "during the pendency of the petition or within 3 years prior to filing the petition," the petitioner "violated any applicable employment-related laws or regulations." 8 C.F.R. § 214.2(h)(10)(v)(B). The final rule also specifies that DHS will revoke or

deny a petition if the petitioner or its employees collected a prohibited fee, or the visa beneficiary paid a prohibited fee, unless the petitioner demonstrates that it "made ongoing, good faith, reasonable efforts to prevent and learn of the prohibited fee collection or agreement . . . throughout the recruitment, hiring, and employment process." *Id.* § 214.2(h)(5)(xi)(A)(1)–(2), (h)(6)(i)(B)(1)–(2).

The plaintiffs are national trade associations who represent seasonal and agricultural employers.[1] Dkt. 1 ¶¶ 7–11. They ask the court to set aside the DHS final rule under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–59, arguing that (1) the three-year lookback period for employment-law violations is impermissibly retroactive; (2) the language allowing denial after violation of "any applicable employment-related laws or regulations" is impermissibly vague; and (3) the definition of "ongoing, good faith, reasonable efforts to prevent and learn of" prohibited fee collection is also

[1] The plaintiffs have Article III standing to bring this lawsuit because their "members would otherwise have standing to sue in their own right;" the interests they seek "to protect are germane to the organization's purpose;" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Nat'l Religious Broadcasters v. Fed. Commc'ns Comm'n*, 138 F.4th 282, 290 (5th Cir. 2025); Dkts. 26-1 ¶¶ 3, 12–13; 26-2 ¶¶ 3–5, 10–12; 26-3 ¶¶ 3, 12–14; 26-4 ¶¶ 3, 9–11; 26-5 ¶¶ 4–6, 12–14.

impermissibly vague.[2] *Id.* ¶¶ 47–62. The plaintiffs and the defendants have filed cross-motions for summary judgment. Dkts. 26, 31.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Summary judgment is the correct mechanism for resolving disputes about the validity of an agency's final rule. *See Rest. L. Ctr. v. United States Dep't of Lab.*, 120 F.4th 163, 170 (5th Cir. 2024) (challenge to final rule appealed after district court's ruling on cross-motions for summary judgment). On cross-motions for summary judgment, courts must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Id.* (quoting *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 233 (5th Cir. 2019)).

"When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v.*

[2] The complaint also alleges that the final rule violates the Congressional Review Act. Dkt. 1 ¶ 45. The court dismissed that claim for lack of jurisdiction on June 3, 2025. Dkt. 18.

*Raimondo*, 603 U.S. 369, 395 (2024). "The court fulfills that role by . . . ensuring the agency has engaged in reasoned decisionmaking within [the] boundaries" of its congressionally delegated authority. *Id.* (internal quotation marks and citations omitted). Under the APA, courts must "hold unlawful and set aside agency actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Rest. L. Ctr.*, 120 F.4th at 170 (quoting 5 U.S.C. § 706(2)(A)).

## III. Analysis

### A. Retroactivity

"Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Accordingly, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* Laws are impermissibly retroactive when their application "would take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past." *Vartelas v. Holder*, 566 U.S. 257, 266–67 (2012) (quotation omitted) (immigration law "attached a new disability" to a lawful permanent resident when neither his prior criminal "sentence, nor the immigration law in effect

when he was convicted and sentenced, blocked him from occasional visits to his parents in Greece"). However, a law is not retroactive simply because it considers or depends on facts "from a time antecedent to the enactment." *Reynolds v. United States*, 292 U.S. 443, 449 (1934). "[A] statute is not made retroactive merely because it draws upon antecedent facts for its operation," and rules are not retroactive just because they "unsettle expectations and impose burdens on past conduct." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 n.24 (1994) (quotation omitted); *see also Ass'n of Accredited Cosmetology Schs. v. Alexander*, 979 F.2d 859, 865 (D.C. Cir. 1992) (regulation requiring Department of Education "to look at schools' past default rates in determining future eligibility for GSL program participation" was not retroactive).

Here, the plaintiffs assert that that the final rule "imposes new burdens—including disclosure requirements, documentation, and potential H-2 petition denial—based on past, completed conduct." Dkt. 26 at 17. These new burdens, they argue, make the requirement to disclose labor-law violations "up to three years prior to the Rule's effective date . . . unlawfully retroactive." *Id.* The defendants, on the other hand, argue that the final rule is not retroactive because it merely "alters a future effect" and applies only to H-2 petitions "filed on or after the effective date of [the] rule." Dkt. 31 at 13.

The court agrees with the defendants.

First, the court notes that employers with unfiled or pending petitions do not have a vested right to H-2 certification. *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012) (important rights are implicated when a government entity suspends *issued* licenses or certificates, but those same interests do not attach to licenses that have not yet been issued). Accordingly, the plaintiffs' retroactivity claim hinges on whether the final rule "create[s] a new obligation, impose[s] a new duty, or attach[es] a new disability" with respect to prior employment-law violations. *Vartelas*, 566 U.S. at 266. In addition to creating documentation and disclosure burdens, the plaintiffs argue that the final rule is unlawful because many employers "reasonably settled disputes about labor laws prior to the promulgation of the final rule" without anticipating that those settlements could disqualify them from the H-2 program. Dkt. 26 at 17; *see, e.g.*, Dkts. 26-1 ¶ 13, 26-2 ¶ 12. This argument is unavailing.

The Fifth Circuit has held that a regulation which allows for discretionary exceptions "neither attaches a new disability to past conduct nor upsets settled expectations." *Perez Pimentel v. Mukasey*, 530 F.3d 321, 326 (5th Cir. 2008). In this case, the final rule does not mandate denial of an employer's petition for H-2 certification just because the employer has

committed a labor-law violation in the last three years. 8 C.F.R. § 214.2(h)(10)(v)(B). Instead, the final rule specifies that "USCIS [United States Citizenship and Immigration Services] *may* deny such a petition if it determines that the petitioner or successor has not established its intention and/or ability to comply with H–2A or H–2B program requirements." *Id.* (emphasis added). The final rule notes employers' concerns about prior settlements and clarifies the following:

> DHS acknowledges the commenters' concern that some employers may have agreed to pay a civil monetary penalty for alleged minor violations because they were unaware at the time of their agreement that this could be a violation potentially leading to a petition denial. However, because the new discretionary provisions do not mandate denial, these petitioners would have the opportunity to explain why they agreed to pay fines which USCIS would then take into consideration, along with all relevant factors including the egregiousness of the violation(s) and the severity or monetary amount of the fines paid, in determining whether the petitioner has the intent and ability to comply with H-2 program requirements and obligations. In exercising its discretion, DHS will consider all of the facts presented and in doing so, will accord appropriate weight to an employer's previous violations and actions based on the nature and severity of such violations and actions.

89 Fed. Reg. 103255; *see also* 8 C.F.R. § 214.2(h)(10)(v)(C).

Denial of petitions under this section is discretionary, and DHS has clearly specified the factors it will consider in determining whether a petitioner "has the intent and ability to comply with H-2 program requirements." 89 Fed. Reg. 103247–48. Accordingly, the final rule's three-

year-lookback provision does not attach "a new disability" to an employers' past conduct, nor does it upset employers' "settled expectations" in receiving H-2 classification. *See Perez Pimentel*, 530 F.3d at 326. Accordingly, the court finds that the final rule is not impermissibly retroactive.

**B. Vagueness**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The void-for-vagueness doctrine grows from two well-established principles: (1) "regulated parties should know what is required of them so they may act accordingly" and (2) "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fed Commc'ns Comm'n v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). In applying these principles, however, the Fifth Circuit has made clear that a law need not "delineate the exact actions a person would have to take to avoid liability." *Doe I v. Landry*, 909 F.3d 99, 118 (5th Cir. 2018) (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008)). Instead, the law requires that a "statute be written in such a manner that 'ordinary people' can understand what is prohibited." *Id.*

An agency regulation can violate the APA's "arbitrary and capricious"

standard when it is overly vague. *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 458 (5th Cir. 2021). However, the adoption of broad regulatory standards "is not necessarily arbitrary and capricious." *Id.* (quotation omitted). "[T]he relevant question for examining the rationality of [such a] standard is whether the agency adequately explained why it adopted it." *Id.*

### 1. Employment-Related Laws or Regulations

The plaintiffs argue that the language allowing denial after violation of "any applicable employment-related laws or regulations" is impermissibly vague. Dkt. 1. ¶¶ 55–57. The plaintiffs contend that the final rule's failure to define "employment-related laws or regulations" or to "identify the universe of laws it purports to encompass" does not give fair notice and, therefore, violates due process. Dkt. 26 at 19–20. The plaintiffs add that the "uncertainty over what 'may' trigger enforcement" "chills legitimate conduct" and "invit[es] arbitrary enforcement." *Id.* at 21.

The government responds that the plaintiffs have fair notice of the phrase "employment-related laws or regulations" because it is used throughout other regulations of employers and H-2 program applications that employers certify. Dkt. 31 at 17–18 (listing regulations from both the Department of Labor and DHS that use this phrase or a nearly identical one).

For example, forms required by both H-2A and H-2B employers require the employers to certify their compliance with "applicable Federal, State and local *employment-related laws and regulations*." *Id.* at 18–19 (quoting Forms ETA-790A and ETA-9142B) (emphasis added). According to the government, these H-2 regulations and related forms "provide sufficient prior understanding of" the terms at issue such that the final rule's use of the exact same terms makes it "sufficiently clear for people of ordinary intelligence to understand its requirements and comply." *Id.* at 19.

The government also argues that the final rule provides objective guidance that will prevent arbitrary enforcement. DHS lists the violations that could lead it to conclude that a petitioner cannot comply with H-2 regulations, including "[a]ny final administrative or judicial determination . . . that the petitioner violated any applicable employment-related laws or regulations, including health and safety laws or regulations." 8 C.F.R. § 214.2(h)(10)(v)(B)(3). As previously discussed, a comment during the rulemaking process asked USCIS to "create a list of key labor, employment, wage and hour, civil rights, disability, anti-trafficking, and anti-discrimination laws" that, if violated, would likely prohibit an employer "from having a petition approved for an H-2 worker." 89 Fed. Reg. 103257 (citation modified). In response, "DHS decline[d] to create a specific list"

because "violations underlying these determinations can vary widely in nature and severity." *Id.* Instead, the regulation lists eight, non-exhaustive factors that "USCIS will consider" when determining an employer's "ability to comply with H-2A or H-2B program requirements," "including, but not limited to:

> (1) The recency and number of violations;
> (2) The egregiousness of the violation(s), including how many workers were affected, and whether it involved a risk to the health or safety of workers;
> (3) Overall history or pattern of prior violations;
> (4) The severity or monetary amount of any penalties imposed;
> (5) Whether the final determination, decision, or conviction included a finding of willfulness;
> (6) The extent to which the violator achieved a financial gain due to the violation(s), or the potential financial loss or potential financial injury to the workers;
> (7) Timely compliance with all penalties and remedies ordered under the final determination(s), decision(s), or conviction(s); and
> (8) Other corrective actions taken by the petitioner or its successor in interest to cure its violation(s) or prevent future violations."

8 C.F.R. § 214.2(h)(10)(v)(C)(1)–(8).

The government adds that the notice of proposed rulemaking ("NPRM") explains the agency's reasoning for these eight factors and how the agency will apply them. Dkt. 31 at 21; *see also* 88 Fed. Reg. 65040-01, 65060 (Sept. 30, 2023). The NPRM also confirms that USCIS's analysis will use the "preponderance of the evidence" standard of proof, under which "the evidence must demonstrate that the petitioner's claim that it is willing and

able to comply with the requirements of the H-2 program is 'more likely than not' true after taking into consideration the prior violations and any relevant factors, both negative and positive." 88 Fed. Reg. 65060.

The court agrees with the government. The phrase "employment-related laws or regulations" is understandable by ordinary people, including employers who routinely engage with these kinds of laws and regulations. *See Doe I*, 909 F.3d at 118; Dkt. 31 at 17–19. As the final rule states, "this provision is consistent with existing [Department of Labor] regulations requiring H-2 petitioners to comply with all applicable Federal, State, and local laws and regulations, including health and safety laws." 89 Fed. Reg. 103251. DHS is not obligated to identify the specific laws or specific violations that could jeopardize an H-2 petition. *See Doe I*, 909 F.3d at 117 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Contrary to the plaintiffs' preference, "perfect clarity and precise guidance is not required." *Id.* (citation modified).

Moreover, the plaintiffs are not challenging DHS's "*application* of a broad standard to a specific case," but rather "the putative vagueness of [the rule] on its face." *Huawei*, 2 F.4th at 458. "An agency is not obliged to issue a comprehensive definition all at once." *Id.* (quoting *PDK Lab'ys Inc. v. DEA*,

438 F.3d 1184, 1194 (D.C. Cir. 2006) (citation modified). Rather, an agency "may proceed case by case." *Id.* (citation modified).

That is exactly what the rule at issue does here. DHS not only provides the eight factors USCIS will use to examine potential violations, it also explains at length how USCIS would review them and any others that may be relevant "in the totality" because "not all factors would be relevant in all cases, and different factors may be weighted differently depending on the circumstances *of each case*." 88 Fed. Reg. 65060 (emphasis added). In response to commenters' requests, DHS declined to "[p]rovide specific examples" of violations that would necessarily "trigger a discretionary denial" because "USCIS will evaluate each violation together with all the other relevant factors on a case-by-case basis." 89 Fed. Reg. 103245.

As the Fifth Circuit has held, "an agency's adopting" a "totality . . . standard is not necessarily arbitrary and capricious." *Huawei*, 2 F.4th at 458 (quotation omitted). "Rather, the relevant question for examining the rationality of the ["employment-related-laws-or-regulations"] standard is whether the agency adequately explained why it adopted it." *Id.* The NPRM thoroughly explains DHS's rationale for adopting the eight-factor test under the preponderance-of-the-evidence standard, and the final rule

elaborates on that reasoning without avoiding or failing to respond to the relevant comments. *See* 88 Fed. Reg. 65060; 89 Fed. Reg. 103245.

Accordingly, the court rejects the plaintiffs' claim that the phrase "employment-related laws or regulations" is vague.

### 2. Ongoing, Good Faith, Reasonable Efforts

The court also finds that the final rule's requirement that employers must demonstrate "ongoing, good faith, reasonable efforts" to prevent fee collection by third parties in the recruitment, hiring, and employment process is not impermissibly vague.

The plaintiffs argue that the final rule "offers no meaningful standard for what satisfies this requirement." Dkt. 26 at 23. The final rule does not "explain how [DHS] will determine that a fee was paid and what amount of evidence would trigger the reimbursement requirement or the denial of petitions." *Id.* at 24. The plaintiffs assert that this lack of guidance will "allo[w] DHS to decide, however capriciously, when an employer has not" complied with this rule. *Id.* Moreover, according to the plaintiffs the policy "penalize[s] employers" who use recruitment programs that are "endorsed by the U.S. government and known to have foreign government employees charging a fee for recruitment services." *Id.* at 23–24.

The government counters that this standard accounts for public comments. Based on comments in the NPRM, "DHS clarified the standard for prohibited fee collection from 'due diligence'" to the current standard of "'ongoing, good faith, reasonable efforts' to align better with the 'regulatory language at 8 CFR 214.2(h)(5)(xi)(A)(1) and 8 CFR 214.2(h)(6)(i)(B)(1)'" which requires the same standard. Dkt. 31 at 23 (quoting 89 Fed. Reg. 103211).

In addition to making that change, DHS provides several "non-exhaustive factors that a petitioner may use to show that it has made an 'ongoing, good faith, reasonable effort[.]'" 89 Fed. Reg. at 103232.

> These factors may include, but are not limited to (1) whether the petitioner was providing compensation to the third party entity such that the third party would have no incentive to pass on costs to workers; (2) whether the petitioner had procedures to contact and monitor the performance of relevant parties in the recruitment chain, whether located in the United States or abroad; and (3) whether the petitioner has a mechanism to communicate directly with workers during and after the recruitment process and properly investigate any reports of prohibited fees.

*Id.* The final rule also specifies that these determinations "will be made on a case-by-case basis, taking into consideration all of the facts presented." *Id.*

The government adds that this rule "was implemented against the history of the H-2 visa program." Dkt. 31 at 24. "The use of recruitment fees is pervasive in the industry," and the plaintiffs in this case "are already aware,

or willfully ignorant, of the issues faced by migrant workers being charged prohibited fees." *Id.* at 24–25. In the context of the history of these fees and DHS's regulation of them, the government argues that the "ongoing, good faith, reasonable effort" standard is "sufficiently clear for people of ordinary intelligence"—especially those who, like the plaintiffs, are so familiar with the issues at play—"to understand its requirements and comply." *Id.* at 25.

Again, the court agrees with the government. For the same reasons explained above, this standard does not leave employers in the dark about DHS's compliance requirements. DHS's lengthy explanations in the NPRM, list of non-exclusive factors, and case-by-case analysis all comport with this Circuit's requirements. *See Doe I*, 909 F.3d at 116, 118; *Huawei*, 2 F.4th at 458.

Accordingly, the court rejects the plaintiffs' claim that the phrase "ongoing, good faith, reasonable effort" is unconstitutionally vague.

* * *

For the foregoing reasons, the court grants the defendants' cross-motion for summary judgment (Dkt. 31) and denies the plaintiffs' motion for summary judgment (Dkt. 26). The court will enter a separate final judgment.

Signed on Galveston Island this 30th day of October, 2026.

______________________________
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE